[No. A127971. First Dist., Div. One. Apr. 22, 2011.]

MARGARET SUE KAUFMAN, Plaintiff and Respondent, v.
ROBIN GOLDMAN, Defendant and Appellant.

736

## COUNSEL

Lawrence M. Scancarelli and Jerod Lewis Hendrickson for Defendant and Appellant.

Law Offices of Richard S. E. Johns and Richard S. E. Johns for Plaintiff and Respondent.

## OPINION

**DONDERO, J.**—In this action to enforce the terms of a settlement agreement entered into following a landlord-tenant dispute, defendant tenant Robin Goldman appeals the trial court's order granting plaintiff landlord Margaret Sue Kaufman's motion for summary adjudication, and its judgment awarding possession of the apartment to plaintiff. We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The essential facts of this case are undisputed. In July 1986, defendant entered into a lease with plaintiff's predecessor for an apartment located on Pine Street in San Francisco. The rent was set at $600 per month.[1] The apartment is subject to the San Francisco Residential Rent Stabilization and Arbitration Ordinance (SFRRSAO).[2]

[1] The rent increased slightly over time. At the time plaintiff filed her motion for summary adjudication in October 2009, the rent was $769.40.

[2] SFRRSAO, San Francisco Administrative Code section 37.2, subdivision (r) defines "rental units" as "All residential dwelling units in the City and County of San Francisco together with the land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." All code references are to the SFRRSAO, chapter 37 of the San Francisco Administrative Code, unless otherwise indicated.

On August 7, 2000, plaintiff served defendant with a three-day notice to pay rent or quit.

On February 5, 2001, plaintiff filed an unlawful detainer action against defendant, alleging that defendant had failed to pay rent for the month of August 2000 after having been served with the three-day notice.

On March 30, 2001, defendant entered into a settlement agreement (Agreement) with plaintiff. As a part of the Agreement, defendant agreed to terminate her tenancy and vacate the apartment on or before March 1, 2008. She acknowledged that in so agreeing, she was "waiving any legal rights and protections which would warrant her ongoing right to remain in possession of the [apartment] after that date." She also agreed she would not seek relief from forfeiture if plaintiff filed a future action to regain possession, including waiving any rights she might have under the SFRRSAO. She agreed to pay $5,743.04 in rent due for the period of August 2000 through March 31, 2001, as well as $4,307.28 in advance rent for the period of April 1, 2001, through September 30, 2001. She also agreed to pay $3,100 towards plaintiff's attorney fees. In return, plaintiff agreed to dismiss the unlawful detainer action with prejudice. The Agreement was approved as to form by attorneys for both parties.

On October 30, 2007, plaintiff's attorney sent defendant a letter reminding her of the provision in the Agreement wherein she agreed to vacate the apartment by March 1, 2008.

On November 12, 2007, defendant's new attorney sent plaintiff's attorney a letter claiming the Agreement was not enforceable and stating that defendant would not relinquish the apartment. The letter cites to a number of justifications, including that the purported waiver of defendant's legal rights was void under SFRRSAO, section 37.9, subdivision (e), and that the Agreement's move-out provision did not constitute "just cause" under the SFRRSAO.

Defendant did not move out of the apartment on March 1, 2008, and continued to occupy the residence during the pendency of this lawsuit. Defendant submitted monthly rent checks during this time. All these checks were ultimately returned to her uncashed, except for a single check that was mistakenly deposited. Plaintiff issued a refund check for that payment and sent it to defendant.

On February 10, 2009, plaintiff filed a complaint for breach of contract, declaratory relief, and specific performance.

On March 16, 2009, defendant filed a demurrer to the complaint.

On April 28, 2009, the trial court overruled defendant's demurrer.

On May 18, 2009, defendant filed her answer to the complaint, asserting 21 affirmative defenses.

On October 8, 2009, plaintiff filed a motion for summary adjudication of the second·and third causes of action in the complaint (declaratory relief and specific performance), and summary adjudication of each affirmative defense. That same day, defendant filed a motion for summary judgment, or alternatively for summary adjudication. In her motion she asserted the Agreement's move-out provisions are unenforceable because they violate the SFRRSAO and include waivers that are void as against public policy.

On January 21, 2010, the trial court filed its order granting plaintiff's motion for summary adjudication and denying defendant's motion for summary judgment and summary adjudication.

On March 26, 2010, the trial court entered its amended judgment awarding possession of the apartment to plaintiff. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "A court must 'strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact.' [Citation.]" (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 112 [96 Cal.Rptr.2d 394].) On appeal, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) When there is no dispute as to the relevant

facts, we exercise our independent judgment as to their legal effect. (*Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 325 [81 Cal.Rptr.2d 557].)

## II. *The Agreement Is Valid and Enforceable*

### A. *The Agreement Does Not Create a New or Renewed Tenancy*

In arguing that the trial court erred in granting plaintiff's motion for summary adjudication, defendant first claims a triable issue of fact exists as to the renewal of her tenancy. She contends she became a holdover tenant after March 1, 2008, and that by accepting rental payments for over a year after her right to occupy the unit had expired and failing to return these checks within a reasonable time, plaintiff created a new or renewed tenancy. She also asserts the court's ruling was prejudicial because it denied her the right to a jury trial.

■ We disagree with defendant's contention that she became a holdover tenant after March 1, 2008, by remaining in the apartment and continuing to mail monthly rent checks. It is true that when a tenant continues in possession after the expiration of a fixed term, a "tenancy-at-sufferance" is created. Civil Code section 1945 provides: "If a lessee of real property remains in possession thereof after the expiration of the hiring, *and the lessor accepts rent from him*, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year." (Italics added.) "When the term of a lease expires but the lessee holds over without the owner's consent, he becomes a tenant at sufferance. [Citation.] 'Since the possession of the tenant at sufferance is wrongful, the owner may elect to regard the tenant as a trespasser . . . .' [Citation.] If instead the owner accepts rent from a tenant at sufferance he accepts the tenant's possession as rightful and the tenancy is converted into a periodic one." (*Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency* (1986) 178 Cal.App.3d 435, 445 [223 Cal.Rptr. 728].)

■ Defendant claims plaintiff "accepted" her post-March 2008 rent checks because she did not "act in a reasonable or prompt manner to communicate to [defendant] that [she] had any issue with her monthly rental payments for March 2008 and thereafter." She asserts plaintiff waived any objection to the tender of her rent checks by operation of Code of Civil Procedure section 2076, which provides in part: "The person to whom a tender is made must, at the time, specify any objection he may have to the

money, instrument, or property, or he must be deemed to have waived it . . . ." "The purpose of section 2076 . . . is to allow a debtor who is willing and able to pay his debt to know what his creditor will demand, so that he may, if he chooses, make his offer conform." (*Thomassen v. Carr* (1967) 250 Cal.App.2d 341, 350 [58 Cal.Rptr. 297].)

Defendant relies on *Sheldon Builders, Inc. v. Trojan Towers* (1967) 255 Cal.App.2d 781 [63 Cal.Rptr. 425], in arguing that plaintiff's retention of her post-March 2008 rent checks constituted an acceptance. In *Sheldon*, the plaintiff contractor accepted a check from the defendant partnership for services rendered. The contractor did not deposit the check, but retained it without notifying the partnership that he would not accept the check as payment in full. (*Id.* at p. 788.) In determining whether the contractor had received payment for services rendered, the court held that under Code of Civil Procedure section 2076 and Civil Code section 1501[3] he was estopped from claiming that he had not been paid in full because he had accepted the check without complaint and with full knowledge that the check was nonconforming. (255 Cal.App.2d at p. 788.)

We conclude plaintiff never accepted defendant's post-March 2008 rent checks. It is undisputed that plaintiff sent defendant a letter in October 2007 informing her that, per the Agreement, she was required to vacate the apartment by March 1, 2008. Defendant offers no evidence suggesting that plaintiff ever altered her position on this issue. Because defendant no longer had a legal contractual right to occupy the apartment under the terms of the Agreement, plaintiff was not required to specify any objection to her submission of the post-March 2008 rent checks. Accordingly, defendant's tender of checks did not satisfy any existing obligation she had to plaintiff. Thus, Code of Civil Procedure section 2076 is inapplicable to the circumstances of this case. Plaintiff had already advised defendant of her obligation under the settlement to vacate the premises. The checks retained were not compensation for services rendered nor satisfaction of a debt defendant owed plaintiff. A review of defendant's bank statement would reflect only one check was cashed and the evidence suggests that was inadvertent. (See also *Major-Blakeney Corp. v. Jenkins* (1953) 121 Cal.App.2d 325, 332 [263 P.2d 655].) In sum, defendant has not demonstrated that a triable issue of fact exists as to the alleged renewal of her tenancy.

---

[3] Civil Code section 1501 provides: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated."

B. *The Agreement Is Just and Reasonable*

Defendant attacks the trial court's grant of summary adjudication on plaintiff's action for specific performance, claiming that she raised a triable issue of fact as to whether she received adequate consideration and whether the Agreement is just and reasonable.

■ Specific performance of a contract is not available against a party who has not received adequate consideration. (Civ. Code, § 3391, subd. 1.) Specific performance also cannot be enforced against a party to a contract if the contract is not, as to that party, just and reasonable. (Civ. Code, § 3391, subd. 2.) These requirements are closely related. (*Petersen v. Hartell* (1985) 40 Cal.3d 102, 109 [219 Cal.Rptr. 170, 707 P.2d 232].)

■ Here, we conclude defendant received adequate consideration under the Agreement. An agreement to settle a bona fide dispute is presumed to be supported by adequate consideration on each side. (*Miller v. Johnston* (1969) 270 Cal.App.2d 289, 299 [75 Cal.Rptr. 699].) Further, defendant received sufficient consideration because she was allowed to remain in the apartment for an additional seven years at below-market rent, rather than risk the outcome of an unlawful detainer trial.[4]

■ Defendant complains enforcement of the Agreement is unjust because she will lose her long-term rental and be deprived of below-market rent. She also claims plaintiff will receive a "windfall" because she will be able to rent the apartment at current market rent. These circumstances are not relevant to our analysis: "The fairness of a bargain is to be viewed in the light of the circumstances as they existed at the time the bargain was struck and not at the time the parties seek to enforce the rights based upon their earlier contract." (*County of Los Angeles v. Law Bldg. Corp.* (1967) 254 Cal.App.2d 848, 856 [62 Cal.Rptr. 542].) As noted, the Agreement allowed defendant to remain in her rent-controlled apartment for seven years. She has failed to demonstrate that the Agreement is unjust or unreasonable.

C. *Whether Plaintiff Has an Adequate Legal Remedy of Damages*

Defendant argues that the trial court erred in granting summary judgment on the claim for specific performance because there was a material issue of

---

[4] Defendant claims had she contested the unlawful detainer, she could have obtained relief from forfeiture under Code of Civil Procedure section 1179. This is pure speculation and, in any event, is irrelevant given that she chose to settle rather than to litigate the action.

disputed fact as to whether the legal remedy of damages was inadequate to compensate for the breach of contract. She claims that "[i]n a city the size of San Francisco, where there are a large number of residential rental units, [plaintiff] has an adequate remedy of damages for Breach of Contract." We are not persuaded.

■ It is presumed that the breach of an agreement to transfer real property cannot adequately be satisfied by financial payment. (Civ. Code, § 3387.) Specific performance regarding real property will be granted as a matter of course unless some other equitable reason for denial is shown. (See Civ. Code, § 3384.) The party seeking enforcement does not have to show inadequacy of the legal remedy. (*Porporato v. Devincenzi* (1968) 261 Cal.App.2d 670, 677 [68 Cal.Rptr. 210].) Instead, it is defendant's burden to prove damages constitute an adequate remedy. (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 474 [72 Cal.Rptr.3d 835].) After reviewing the record in this matter, and considering the contentions of defendant, we conclude there is no legal justification to preclude the application of specific performance as a proper remedy in this case.

Defendant has not cited to any authority for the proposition that these principles involving real property transactions do not apply to multiunit apartment buildings. Nor has she presented any evidence to rebut the presumption that damages are an inadequate remedy. We find no error.

### D.: *Trial Court Did Not Err in Granting Possession*

Defendant claims the trial court erred in granting plaintiff possession of the apartment as the remedy in the action for specific performance. She contends that claims for possession of real property can be litigated only in actions for unlawful detainer, ejectment, quiet title, or trespass. She cites no cases or statutes for this proposition.

■ Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583].) If either is not provided, the appellate court may treat the issue as waived. (*Ibid.*) Accordingly, we deem this issue waived.

### E. *The Move-out Provision Is Lawful*

Defendant claims the Agreement's move-out provision constitutes a void waiver of her rights under the SFRRSAO, and that enforcement of the

Agreement violates public policy. She notes tenants generally are in an inferior bargaining position with respect to rental agreements and that courts may invalidate a settlement agreement that is illegal, unjust or contrary to public policy.

## 1. SFRRSAO Section 37.9, Subdivision (e) Does Not Apply

Defendant claims the waiver of rights contained in the Agreement is invalid under SFRRSAO section 37.9, subdivision (e). That section provides, in part: "It shall be unlawful for a landlord . . . to endeavor to recover possession or to evict a tenant except as provided in Section 37.9(a) [(just cause)] and (b) [(owner move-in)]. Any person endeavoring to recover possession of a rental unit from a tenant or evicting a tenant in a manner not provided for in Section 37.9(a) or (b) without having a substantial basis in fact for the eviction as provided for in Section 37.9(a) shall be guilty of a misdemeanor and shall be subject, upon conviction, to the fines and penalties set forth in Section 37.10A. *Any waiver by a tenant of rights under this Chapter shall be void as contrary to public policy.*" (Italics added.)

In *Chacon v. Litke* (2010) 181 Cal.App.4th 1234 [105 Cal.Rptr.3d 214] (*Chacon*), the appellate court held that where a tenant temporarily vacates a rental unit in order for a landlord to make improvements, the SFRRSAO does not allow the landlord to recover permanent possession, and the tenant does not waive the right to reoccupy, even if the tenant did not voluntarily vacate. (*Chacon, supra,* at pp. 1248–1249.) The case concerns SFRRSAO section 37.9, subdivision (a)(11) (eviction for failure to temporarily vacate unit for repairs). In finding that the tenants had not waived their right to reoccupy the unit by failing to leave voluntarily, the court observed: "The language of section 37.9, subdivision (e), providing that '[a]ny waiver by a tenant of rights under [the Ordinance] shall be void as contrary to public policy,' rejects the idea of a waiver of rights by the tenant and, therefore, further supports our reading of the plain meaning of the Ordinance." (*Chacon, supra,* at p. 1248.)

The *Chacon* opinion is inapposite as it does not address the issue of waiver in the context of a prelitigation settlement agreement. The opinion does, however, address the effect of a stipulation entered into after the landlord's successful unlawful detainer action. The appellate court considered whether the language of the stipulation could support a finding that the tenants had agreed to permanently surrender their right to possession of the property. The court concluded that the stipulation did not "manifest the objective intention of the parties to award permanent possession to [the landlord] or to constitute

a waiver of the [tenants'] right to reoccupy the apartment under the Ordinance." (*Chacon, supra*, 181 Cal.App.4th 1234, 1254.) The court did not state whether, had the stipulation contained such a waiver, it would have been deemed invalid under SFRRSAO section 37.9, subdivision (e).

While SFRRSAO section 37.9, subdivision (e) purports to void any waiver by a tenant of rights under the ordinance in the context of an eviction or an owner move-in, the waiver language does not apply to the settlement of a legal claim that was made for valuable consideration in return for termination of litigation.[5] Parties frequently settle landlord-tenant disputes, and move-out provisions are not uncommon. If SFRRSAO section 37.9, subdivision (e) were deemed to apply to such move-out provisions, this would have a chilling effect on future settlements of unlawful detainer actions as landlords would have little incentive to enter into prelitigation negotiations.

### 2. *The Agreement Does Not Violate Public Policy*

Defendant's assertion that the Agreement violates public policy also fails. When parties to pending litigation enter into a settlement, they enter into a contract. Such a contract is subject to the general law governing all contracts. (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338] [offers by a party to compromise under Code Civ. Proc., § 998].) Courts seek to interpret contracts in a manner that will render them " 'lawful, operative, definite, reasonable, and capable of being carried into effect' " without violating the intent of the parties. (*Robbins v. Pacific Eastern Corp.* (1937) 8 Cal.2d 241, 272–273 [65 P.2d 42].) In our discussion regarding the action for specific performance we have already concluded the Agreement is just and reasonable.

It is important to recognize there is a strong public policy favoring settling of disputes. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1475 [69 Cal.Rptr.3d 273].) "We note that there is a well-established policy in the law to discourage litigation and favor settlement. Pretrial settlements are highly favored because they diminish the expense of litigation." (*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1683 [285 Cal.Rptr. 441].) Additionally, "Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions." (*VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 713

---

[5] For this reason, we also disagree with defendant's assertion that the remedy of possession "constitutes an unenforceable waiver" of Civil Code section 1953, which requires notice and hearing to terminate a tenancy.

[61 Cal.Rptr.3d 818].)[6] The power to void a contract should be exercised only where the case is free from doubt. (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 777, fn. 53 [62 Cal.Rptr.3d 527, 161 P.3d 1095].)

The cases relied on by defendant in support of her public policy argument are distinguishable. In *Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1 [12 Cal.Rptr.2d 676], the appellate division of a superior court held the trial court had erred in awarding possession to a landlord of an illegal unit because he had not paid relocation benefits to the tenant, as required under the local rent control ordinance. (*Id.* at pp. Supp. 3–4.) The appellate court also found the lease agreement was void because the occupancy violated a zoning or building code enacted for the benefit of the general public. (*Id.* at p. Supp. 4.) The case did not concern enforcement of a settlement agreement involving a legally rented unit.

In *Timney v. Lin* (2003) 106 Cal.App.4th 1121 [131 Cal.Rptr.2d 387], the appellate court held that a provision in a settlement agreement requiring forfeiture of a substantial deposit paid on a proposed real estate transaction, following a minor delay in delivering a quitclaim deed, was unenforceable. (*Id.* at p. 1128.) In so ruling, the court noted that had the challenged provision been included in a real property sales contract, it would have been deemed void as an illegal forfeiture. (*Id.* at pp. 1126–1127.) The Agreement at issue in this case does not contain a similar forfeiture clause. Thus, the opinion is not applicable to our facts.[7]

Finally, we agree that the public policy in favor of protecting tenants is important. But the time to raise this issue is when a settlement agreement is negotiated with advice of counsel, not seven years after a tenant has enjoyed the benefits of the bargain.

---

[6] Restatement Second of Contracts, section 178 provides:

"(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

"(2) In weighing the interest in the enforcement of a term, account is taken of

"(a) the parties' justified expectations,

"(b) any forfeiture that would result if enforcement were denied, and

"(c) any special public interest in the enforcement of the particular term.

"(3) In weighing a public policy against enforcement of a term, account is taken of

"(a) the strength of that policy as manifested by legislation or judicial decisions,

"(b) the likelihood that a refusal to enforce the term will further that policy,

"(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

"(d) the directness of the connection between that misconduct and the term."

[7] *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46 [45 Cal.Rptr.3d 647], is also not on point as it concerns a Proposition 65 consent judgment.

## DISPOSITION

The order granting plaintiff's motion for summary adjudication and the judgment awarding possession of the apartment to plaintiff are affirmed.

Marchiano, P. J., and Banke, J., concurred.

A petition for a rehearing was denied May 18, 2011.