Filed 3/4/14  Saliba v. Cal. Interscholastic Federation CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRANDON SALIBA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA INTERSCHOLASTIC FEDERATION,<br><br>Defendant and Respondent. | B233531<br><br>(Los Angeles County<br>Super. Ct. No. BS129443) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ann I. Jones, Judge.  Affirmed.

Brandon Saliba and Estephen Saliba, in pro. per., for Plaintiffs and Appellants.

Fagen Friedman & Fulfrost, Diane Marshall-Freeman, and Cynthia M. Smith, for Defendant and Respondent.

_____

This is an appeal from a trial court judgment denying a petition for administrative mandamus. Appellants Brandon Saliba and Estephen Saliba claim the court erred in affirming an administrative decision by respondent California Interscholastic Federation (CIF). After a CIF panel concluded that appellants' mother, Sylvia Saliba (Mrs. Saliba), presented false information to obtain athletic eligibility for her sons, they were banned from competition for one year. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Appellants were successful swimmers at Saint John Bosco High School (St. Bosco) in Bellflower. Brandon was in the ninth grade, and Estephen was in the 10th grade. Sometime after Brandon was diagnosed with attention deficit hyperactivity disorder (ADHD), Mrs. Saliba decided to transfer both sons to Mater Dei High School (Mater Dei) in Orange County, because of what she understood to be its allegedly superior programming for Brandon's special needs. In order to participate in swimming competitions at Mater Dei, appellants needed approval from respondent CIF, a voluntary nonprofit organization authorized by the California Legislature to govern regional and statewide interscholastic activities.[1] The principal function of CIF is to establish rules of eligibility and competition that are enforced by its member schools, which include both St. Bosco and Mater Dei.

The CIF bylaws govern the eligibility of student athletes at its member schools. CIF Bylaw 207.A.(3)[2] governs transfers to a member school during the ninth grade with unlimited interscholastic athletic eligibility, which allows competition at the varsity level.

---

[1] "The CIF was organized at a high school athletic convention held at the Y.M.C.A. Field House in Los Angeles on March 28, 1914. It is now one of 50 state associations that belong to the National Federation of State High School Associations. Generally, the rules recommended by the national body are adopted by the CIF. (CIF Southern Section 1986-1987 Blue Book, p. 16.) [¶] The CIF was legislatively recognized in 1981 as a voluntary organization with responsibility for administering interscholastic athletics in California secondary schools. (Ed. Code, § 33353.)" (*Jones v. California Interscholastic Federation* (1988) 197 Cal.App.3d 751, 756-757, fn. omitted.)

[2] CIF Bylaws are from the CIF Southern Section 2010-2011 Blue Book.

Pursuant to CIF Bylaw 207.B.(1), all other students seeking transfers will have only limited eligibility for one year, which prohibits competition at the varsity level. However, under a hardship waiver, students may be able to transfer schools with unlimited eligibility. CIF Bylaw 208 defines a hardship as an unforeseeable, unavoidable, and uncorrectable circumstance that burdens the student's family, such as a valid change of residence. Finally, CIF Bylaw 202 allows the CIF to disqualify students from interscholastic athletics when a parent provides false information regarding eligibility on behalf of a student, even if the student is unaware of his or her parent's conduct.

Seeking help with the transfer, Mrs. Saliba emailed Monty McDermott, the athletics director at St. Bosco. She asked for assistance in completing a hardship waiver (CIF Bylaw 208), which would allow Estephen to transfer to Mater Dei with Brandon, who would have qualified under the rule allowing transfers during a student's first year of high school (CIF Bylaw 207.A.(3)). McDermott wrote that hardship petitions "are very difficult to obtain," and are normally only possible in cases of "'unforeseeable, unavoidable and uncorrectable' circumstances," such as the "divorce of parents . . . [and] change of custody." He advised that the family was unlikely to succeed in demonstrating these circumstances to obtain a hardship waiver.

Mrs. Saliba completed a Form 207, the Athletic Transfer Eligibility Application, for each of her sons. On Estephen's form, the box for a "limited eligibility" transfer was checked. The section for the family's current address was left blank, but their former address was listed as 4620 Harvey Way in Long Beach. After Mrs. Saliba submitted the paperwork to St. Bosco, the principal signed it. However, when the form was submitted to Mater Dei for approval, the "limited eligibility" box was no longer checked. Instead, the form indicated a transfer pursuant to a "valid change of residence," which would allow for unlimited eligibility. In addition, it listed the family's current address as 13062 Blackbird in Garden Grove. Brandon's paperwork showed signs that it had been altered to list the same address as his current address. Nevertheless, CIF permitted appellants to

3

transfer to Mater Dei in January 2010 with unlimited eligibility. Brandon transferred based on CIF Bylaw 207.A.(3), and Estephen based on a valid change of address, which qualified as a hardship pursuant to CIF Bylaw 208.

In April 2010, appellants traveled with the Mater Dei swimming team to compete at their former high school, St. Bosco. Following the competition, they were seen entering their allegedly former address at 4620 Harvey Way in Long Beach. The CIF-Southern Section (CIF-SS) was advised that appellants had not changed their address, as represented on the transfer forms. As a result, on May 3, 2010, staff from Mater Dei and CIF-SS met and discovered the discrepancies in appellants' paperwork. At an interview with the representatives, Mrs. Saliba said she and her sons moved to Garden Grove in August 2010 because of marriage problems. As proof, she offered her checkbook that listed an address in Garden Grove. However, in response to questions about the difficulties transporting appellants to school and activities, Mrs. Saliba responded, "I live in Long Beach." Mrs. Saliba also confirmed that she completed appellants' transfer forms without any outside help.

On May 5, 2010, CIF-SS Commissioner James T. Staunton wrote to the principal of Mater Dei with findings from the meeting. He confirmed that there was no evidence that the family satisfied the requirements of a valid change of residence. He cited evidence that Mrs. Saliba's car was seen parked at the family's Harvey Way address, the transfer forms showed signs of being altered, the owner of the property at Mrs. Saliba's alleged Garden Grove address lived on the same Harvey Way block as the Saliba family, and Mrs. Saliba was unlikely to obtain a work transfer to Orange County. Based on this information, he concluded "that the family falsified information to gain immediate eligibility for Estephen and Brandon" in violation of CIF Bylaw 202. As a result, he declared appellants ineligible for interscholastic competition through May 5, 2011. He noted that Brandon "might otherwise have been eligible under Bylaw 207 but due to questions on the validity of the move, he too is declared ineligible." Appellants requested an appeal of the decision before the State CIF Appeals Panel.

4

At the appellate hearing in June 2010, appellants were present, represented by attorney James V. Kosnett, with their father, Shuki Saliba (Mr. Saliba).[3] All parties presented oral and documentary evidence. Mr. Saliba and appellants said that they lived with Mrs. Saliba in Long Beach. Appellants described a situation when Mrs. Saliba drove them to school, but first stopped at their alleged Garden Grove address for Mater Dei staff to conduct a home visit. They claimed they "didn't know where [they] were going . . . [and] followed her because [they had] to listen to [their] mom . . . ." Kosnett acknowledged that "Mrs. Saliba went about this completely the wrong way, and she did erase the address, which was not true and she tried to . . . get an exception . . . on the basis of the presentation of . . . this Garden Grove address . . . . [W]e accept that. We admit that." He continued, "Mrs. Saliba did this on her own. Mr. Saliba was not aware of what she was doing. He was not aware of the fact that she gave a . . . false address and that that was her strategy." Kosnett asked the panel not to punish appellants for the "well-intentioned but totally misguided" efforts of Mrs. Saliba. He said she "was deceptive and . . . fooled the boys too."

The panel upheld the decision of CIF-SS. It denied interscholastic competition for appellants at Mater Dei through May 5, 2011 based on the fact that Mrs. Saliba had provided false information to gain eligibility. The panel confirmed that the St. Bosco principal signed the form submitted for Estephen with the understanding that the family was applying for limited eligibility, and not unlimited eligibility. It found that the forms "show[ed] signs of being altered" by Mrs. Saliba after they had been submitted to the principal at St. Bosco. The panel also confirmed that appellants lived in Long Beach, and never lived in Garden Grove. As a result, on June 12, 2010, the panel affirmed the CIF-SS decision to disqualify appellants pursuant to CIF Bylaw 202.

---

[3] The transcript from the appeals panel hearing listed father's first name as "Shuki." However, the panel's written decision spelled it as "Shukri."

5

Appellants filed a petition for a writ of administrative mandate on November 24, 2010.[4] They claimed the panel hearing was unfair, panelists abused their discretion, evidence was insufficient to support the finding, a fundamental right was at issue, they had exhausted all administrative remedies, and relevant evidence was improperly excluded at the hearing. Appellants requested damages and attorney fees. On the same day, Mrs. Saliba filed an application to appoint herself as guardian ad litem for her sons. In their opening brief, appellants argued that Brandon was eligible for a transfer under CIF Bylaw 207, Estephen was entitled to a transfer under CIF Bylaw 208, and Mrs. Saliba committed no fraud. Respondent claimed substantial evidence supported the panel's decision.

In April 2011, the trial court denied appellants' petition pursuant to Code of Civil Procedure section 1094.5.[5] In its statement of decision, the court presented the dispositive issue as whether "the CIF abuse[d] its discretion in concluding that both Students had violated CIF Bylaw 202 when Mrs. Saliba submitted false or fraudulent information concerning their residence in order to obtain unlimited athletic eligibility for her sons. . . ." It found substantial evidence supported the panel's findings. After the trial court judgment, appellants filed a motion to augment in the trial court. On April 27, 2011, the court struck the motion because it was filed by Mrs. Saliba and appellants were still represented by counsel. On May 13, 2011, Mrs. Saliba filed a substitution of attorney order, so that she could represent herself. The court deemed her motion to

---

[4]     Appellants' petition stated that they "petition this Court for a Writ of Administrative Mandamus under Code of Civil Procedure § 1094.5 or Writ of Mandate under CCP §1085 . . . ." In its ruling on the petition, the trial court noted that appellants had failed to specify which type of writ they were seeking. The court found that "they are challenging the sufficiency of the evidence upon which the administrative agency predicated its decision. Accordingly, the Court shall consider this Petition as one for an Administrative Writ of Mandate" pursuant to section 1094.5.

[5]     All subsequent statutory references are to the Code of Civil Procedure.

augment to be a motion for reconsideration pursuant to section 1008, and denied it as untimely. Appellants filed a timely notice of appeal.[6]

## DISCUSSION

Appellants' briefing is noticeably deficient, lacking section headings, relevant citations to legal authority, and substantive legal argument. However, because respondent identified and addressed appellants' legal issues, we are able to analyze their three main contentions below.

### I

Appellants argue the evidence was insufficient to support the trial court's judgment affirming the CIF-SS panel's finding on Mrs. Saliba's fraudulent conduct, and the resulting decision to render them ineligible for one year.

Section 1094.5 provides for the issuance of a writ of mandate "[w]here the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." (§ 1094.5, subd. (a).) "[W]hen the underlying administrative decision does not involve or affect a fundamental vested right, the trial court reviews the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law. [Citations.] When considering all relevant evidence within the administrative record, the trial court cannot lose sight that it is for the administrative agency to weigh the preponderance of conflicting evidence, as the court may reverse an administrative decision only if, based on the evidence before the administrative entity, a reasonable person could not have reached the conclusion reached by that agency.

---

[6] There was an initial problem with this appeal. Appellants had counsel at the hearing before the State CIF Appeals Panel and at the trial court proceedings. At the time, they were minors and appeared through Mrs. Saliba as guardian ad litem. But Mrs. Saliba is not an attorney, and could not have represented them in court. When both minors gained the age of majority, this delayed appeal was allowed to proceed with appellants appearing in propia persona.

7

[Citation.] . . . On appeal, our function is identical to that of the trial court, as we too must determine whether substantial evidence supports the administrative decision. [Citations.] This deferential standard requires us to presume the correctness of the administrative ruling, as all reasonable doubts must be resolved in favor of it. [Citations.]" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1077-1078, fns. omitted (*Ryan*).)

CIF Bylaw 202 requires that information "provided in regard to any aspect of the eligibility of a student must be true, correct, accurate and complete." It allows for disqualification of a student athlete if any "persons associated with the student or the school . . . provided false information in order to fraudulently gain favorable eligibility status for a student . . . whether the student was aware of the fraudulent information or not."

Here, there is substantial evidence to support the finding that Mrs. Saliba provided false information to obtain interscholastic eligibility for her sons at Mater Dei. At the hearing before the State CIF Appeals Panel, appellants' attorney conceded that Mrs. Saliba "was deceptive." He described how she "went about this completely the wrong way, and she did erase the address, which was not true and she tried to . . . get an exception . . . on the basis of the presentation of . . . this Garden Grove address . . . . [W]e accept that. We admit that." He also admitted it was Mrs. Saliba's strategy to give a false address. The transfer forms submitted for appellants indicate her misconduct. When she sent the form to St. Bosco, she neglected to include a current address. But when Mater Dei received the same form, her alleged Garden Grove address was listed. This suggests that Mrs. Saliba attempted to conceal her alleged move from St. Bosco. In addition, appellants, Mrs. Saliba, and Mr. Saliba admitted that they still lived together as a family in Long Beach. Finally, appellants described how Mrs. Saliba took them to the Garden Grove address before school one day so that Mater Dei could see them at the residence. Thus, substantial evidence showed that Mrs. Saliba's listing of a Garden Grove address as the family's current residence was false, she improperly altered

8

the form after submitting it to St. Bosco, and she engaged in fraudulent conduct in an effort to obtain athletic eligibility for her sons.

In their defense, appellants claim the family maintains two addresses for personal reasons, the forms Mrs. Saliba submitted were not fraudulent, CIF-SS officers failed to consider that the move was motivated by Brandon's special needs, and Mrs. Saliba did not understand the rules. Nevertheless, there was substantial evidence before the trial court that Mrs. Saliba provided false information in an effort to obtain athletic eligibility for her sons. The evidence is overwhelming that Mrs. Saliba represented that she and her sons moved to Garden Grove, but never actually lived there. Accordingly, the trial court did not err in denying appellants' petition for a writ of administrative mandate.

## II

Appellants appear to contend that CIF-SS deprived them of due process. They argue they were unable to examine witnesses or offer evidence in unspecified proceedings. Appellants also claim that the same CIF administrative body that heard their eligibility appeal also rendered their initial eligibility determination.

The federal Constitution requires due process claimants to demonstrate a recognized liberty or property interest. (See *Ryan*, *supra*, 94 Cal.App.4th at p. 1059.) In *Ryan*, the court determined that students have no such interest in interscholastic activities. (*Ibid.*) Similarly, appellants here have no recognized right to compete in swimming at Mater Dei. Under the California Constitution's due process provisions, a claimant need not demonstrate a property or liberty interest if he or she can identify a statutorily conferred benefit or interest. (*Id.* at pp. 1069, 1071.) As the *Ryan* court held, no statutes confer a benefit on students to participate in interscholastic activities. (*Id.* at pp. 1072-1073.) Accordingly, appellants have no statutory right to swim for Mater Dei.

The *Ryan* court also held that, even though a student can demonstrate no cognizable due process interest under the federal and California Constitutions, the CIF framework minimized the risk of erroneous deprivation of the student's claimed interest in interscholastic competition. (*Ryan*, *supra*, 94 Cal.App.4th at pp. 1074-1075.) As a

9

result, it found the CIF eligibility regulations did not violate the student's interests. (*Id.* at p. 1076.) The court explained that the regulations provided for CIF's written decisions to be distributed with adequate notice, the student's ability to appeal and participate in a full evidentiary hearing, his legal representation, and his opportunities to present evidence and confront witnesses. (*Id.* at pp. 1067-1068.) Here, appellants were provided with adequate process under similar CIF eligibility regulations. At the preliminary meeting with CIF-SS staff, Mrs. Saliba provided testimony and evidence to support her case. At the later hearing before the State CIF Appeals Panel, appellants were represented by counsel, and had the opportunity to testify, present evidence, and examine witnesses. Mrs. Saliba's alleged falsification of the documents was a central focus of the proceedings. Like the student in *Ryan*, appellants were provided with process that did not risk the erroneous deprivation of their interests.

As to appellants' claim that the same agency that issues preliminary eligibility decisions also handles the appeals process, the evidence indicates otherwise. CIF-SS Commissioner Staunton rendered the first decision on appellant's eligibility. The appeal to the State CIF Appeals Panel was held at a separate office with different panel members. Thus, the evidence does not support appellants' claim, and shows no violation of due process.

III

Finally, appellants' briefs contain references to several statutes, but they fail to raise issues and arguments sufficient for appellate review.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. . . . Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt. [Citations.]" (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 [declining to consider arguments where appellant omitted any explanation of how claimed errors caused harm, neglected to include citations to

10

record, and failed to supply cogent argument with legal basis]; see *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [deeming waived appellant's contentions without citations to supporting cases or statutes].)  In addition, "'[e]ach point in an appellate brief should appear under a separate heading, and we need not address contentions not properly briefed.  [Citations.]'  [Citations.]" (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482.)

Appellants referenced at least four statutes in their opening brief:  "Section 504 of the Rehabilitation Act of 1973, . . . the Americans with Disabilities Act (ADA)," "the Student Success Act (H.R.5) Introduced by Rep. Rokita on June 19, 2013," and "[t]he Privacy Act of 1974 by the Department's regulations at 34 C.F.R. 5b.9(b) . . . ."  They also included brief descriptions of the purpose of each law.  However, appellants did not connect the laws to any issues or facts in this case or offer arguments supporting the statutes' applicability.  Then, in their reply brief, appellants argued that "administrative officers abused their discretion of (HIPPA) by disclosing personal Medical records to third parties," but cited to no supporting facts.  Under a separate heading, they wrote that "UNITED STATES DEPARTMENT OF EDUCATION _Under OCR enforces the following laws:  [¶]  (1) Tittle [*sic*] VI of the Civil Rights Act of 1964 . . . .  [¶]  (2) Title IX of the Education Amendments of 1972 . . . .  [¶]  (3) Section 504 of the Rehabilitation Act of 1973 . . . .  [¶]  [and] (4) The Privacy Act of 1974 . . . .  "  After this list, they indicated that CIF does not adhere to "all codes," but failed to specify facts to support their argument.  Appellants made no use of separate headings for each claim, failed to provide sufficient legal arguments, did not include adequate statements of law, and omitted citations to the administrative record.  While we are aware of the challenges facing appellants appearing before us in propia persona, these arguments are perfunctory, so we do not reach their merits.  A litigant who proceeds in propia persona is entitled to the same consideration and held to the same procedural standards as other litigants and attorneys. (See *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

11

Respondent raises several affirmative defenses to address these perfunctory claims. It argues that we should reject the contentions because they were not asserted before the trial court, appellants' brief was legally insufficient and inappropriately pled, and their case is moot. In light of our conclusions above, we need not address these points.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.