Filed 4/27/23  Postmark Partners v. Paik CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| POSTMARK PARTNERS, LP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KYUNG AH KARA PAIK,<br><br>    Defendant and Appellant. | A165097<br><br>(San Francisco City & County<br>Super. Ct. No. CUD-21-668260) |

Postmark Partners, LP (Postmark) and Kyung ah Kara Paik entered into a settlement agreement to resolve a pending unlawful detainer action. Postmark subsequently filed an ex parte application to enforce the settlement agreement.  The trial court granted the application and entered a judgment awarding, in relevant part, unpaid back rent to Postmark.  On appeal, Paik contends the back rent award violated the terms of their settlement agreement.  She also contends she was entitled to an evidentiary hearing on the amount of back rent.  We disagree and affirm the judgment.

## I.  BACKGROUND

Paik entered into a rental agreement with Postmark in 2016 and, shortly thereafter, stopped paying rent.  Postmark filed an unlawful detainer action against Paik due to her failure to pay rent.  In the complaint, Postmark listed the fair rental value of the premises as $133.17 per day and

stated, "damages to [Postmark] caused by [Paik's] unlawful detainer of the Subject Premises will accrue at that rate." The complaint also stated, "[Paik is] currently obligated to pay the monthly rental sum of $4,250.68 per month."

Paik filed a general denial in response to the complaint, stating "[she] has no information or belief that the following statements of the Complaint are true, so [she] denies them." Her answer also alleged various affirmative defenses, including that Postmark (1) "breached the warranty to provide habitable premises," (2) "is in violation of [Paik's] rights under COVID-19 Tenant Relief Act," and (3) owes Paik "a deposit plus unpaid interest pursuant to San Francisco Administrative Code § 49.2."

The parties subsequently entered into a settlement agreement to resolve the unlawful detainer action. Paik retained counsel prior to executing the settlement. As relevant to this appeal, paragraph 8 of the settlement agreement required Paik to "vacate the Premises leaving it empty of all persons and property on or before . . . January 31, 2022. All keys . . . must be delivered immediately to [the] onsite manager." In exchange, Postmark agreed "to abate prosecution on [the unlawful detainer action] and dismiss the case without prejudice within 5 court days of [Paik's] timely moveout." Paragraph 9 of the settlement agreement further stated, "[Postmark] is not waiving its rights to pursue the unpaid rent from [Paik] through collections or other available court action; and [Paik] is not waiving any defenses to challenge [Postmark's] claims to said rent."

The settlement agreement also outlined Postmark's remedies if Paik breached the agreement. Specifically, paragraph 15 of the agreement provided, "[Postmark] is awarded possession of the Premises if a breach of

2

this Agreement occurs. 'Breach' is defined as [Paik's] failure to abide by any of the terms and requirements of the Paragraph 8."

Paragraph 16 of the settlement agreement also specified: "In the event that [Paik] fails to perform . . . [Postmark's] attorney may appear in the Law and Motion Department, Department/Room 501, of the San Francsico Superior Court . . . with an *ex parte* application and supporting declaration stating that [Paik has] breached the Agreement." The agreement further explained: "Department 501 is conferred with jurisdiction to enter judgment for restitution of the Premises, forfeiture of the lease, as well as all back rent . . . owing pursuant to this *ex parte* procedure . . . , as well as $1,700 in legal fees for any enforcement action." (Boldface omitted.) Finally, the settlement agreement contained a waiver of Paik's right to appeal: "Should a judgment for restitution be signed by the Court, [Paik] expressly waive[s] any right to an appeal . . . for any reason whatsoever."

Paik failed to vacate the premises, remove all of her property, or turn over the keys as required by the settlement agreement.

In response, Postmark applied "on an *ex parte* basis for an order to enter judgment pursuant to the 'Settlement Agreement with Stipulation for Entry of Future Judgment.' " It asserted it "had made efforts earlier in the week prior trying to coordinate [Paik's] moveout, but [Paik] ignored all communications." In support of its application, Postmark submitted a declaration from its onsite manager, Tatiana Kyriakides. Kyriakides stated she asked Paik when she would return the apartment keys, and Paik responded, " 'I do not know.' " In the ex parte application, Postmark "request[ed] the court to enforce the terms of the Settlement by entering judgment against [Paik] for forfeiture of the lease, as well as restitution and possession of the real property . . . [and] for all unpaid rent owed through

3

January 31, 2022 in the amount of $93,584.12 plus $1,700 attorney's fees for enforcement as outlined in the Settlement for a total monetary judgment of $95,284.12." Postmark's application further noted "the unit and its keys have not been surrendered."

Paik opposed the application "on the basis that she substantially performed the Settlement Agreement . . . , any alleged breach was not material, and because the application unlawfully seeks liquidated damages not agreed for [*sic*] in the Settlement Agreement." While Paik stated in her opposition that she moved out of the apartment as of January 31, 2022, nothing in the record indicates she communicated that to Postmark. Paik acknowledged she kept the keys, but asserted she did so in order to complete her move out without inconveniencing Postmark. Paik does not indicate she ever attempted to make arrangements with Postmark to return the keys or establish a later date to return them. Paik's opposition did not request an evidentiary hearing on any of the issues raised in the application. Nor did she dispute the amount of unpaid rent that was due, but rather argued the "judgment of $93,584.12 should be denied because it was never agreed to in the Settlement Agreement."

The trial court granted Postmark's ex parte application and "awarded a monetary judgment against [Paik] . . . for all unpaid rent owed through January 31, 2022 in the amount of $93,584.12 plus $1,700 [in] attorney's fees" along with "restitution and possession of the real property" in question and forfeiture of the lease. The court further noted that "as of 2/3/2022, 9 AM, [Paik] still has not surrendered keys to the premises." Paik timely appealed.

4

## II. DISCUSSION

On appeal, Paik argues she did not breach the settlement agreement due to her substantial performance or, alternatively, the judgment for monetary damages is unenforceable. In response, Postmark contends the waiver provision in the settlement agreement bars Paik from appealing the trial court's judgment, Paik substantially breached the agreement, and the back rent award is enforceable.

### A. *Right to Appeal*

Postmark contends the waiver provision in the settlement agreement bars Paik's appeal. Postmark notes "there is nothing unclear or ambiguous about the appeal waiver clause in question," and it encompasses the court's entire judgment, including rental damages. Conversely, Paik argues Civil Code section 1953 voids the waiver as a matter of public policy, and claims the waiver provision "does not apply to appeals of monetary judgments for back rent."

Courts have regularly held that parties may contractually waive appellate rights. " 'It is well-settled that a party may expressly waive its right to appeal subject to only a few conditions: [¶] 1. The attorney must have the authority to waive a party's right to appeal. [¶] 2. The waiver must be express and not implied. [¶] 3. The waiver must not have been improperly coerced by the trial judge.' " (*PG&E "San Bruno Fire" Cases* (2019) 43 Cal.App.5th 596, 607.) A waiver of the right to appeal must be "explicit[] and unambiguous[]." (*Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596, 605 (*Ruiz*).)

Likewise, parties may waive appellate rights in the context of settlement agreements. (See, e.g., *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1322 (*Concepcion*); *Ruiz, supra,*

222 Cal.App.4th at pp. 603–605.) Because a settlement agreement is a contract, a court may not "impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.) Nor does an express waiver of the right to appeal "preclude an appeal to determine whether or not the judgment was authorized by the [settlement agreement]." (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359.) "Any doubt will be resolved against a waiver of the right to appeal." (*Concepcion*, at p. 1322.)

### 1. The Trial Court's Award of Back Rent Was Within the Terms of the Settlement Agreement

As an initial matter, Paik claims the settlement agreement did not authorize the trial court to award back rent. She contends paragraphs 9 and 15 of the settlement agreement (paragraph 9 and paragraph 15) indicate the agreement only provided for possession of the premises as a remedy for any breach. We disagree.

Paragraph 9 provides: "[Postmark] is not waiving its rights to pursue the unpaid rent . . . through collections or other available court action; and [Paik] is not waiving any defenses to challenge [Postmark's] claims to said rent." Paik interprets paragraph 9 to mean "that the parties did not intend for the Settlement Agreement to involve a court ordered resolution as to the alleged back rent." Paik argues paragraph 15, which states, "[Postmark] is awarded possession of the Premises if a breach of this Agreement occurs," supports her position because it "provides that possession, not back rent, is the remedy for breach of the Settlement Agreement." She argues paragraph 16 of the settlement agreement (paragraph 16), which provides, "Department 501 [of the San Francisco Superior Court] is conferred with jurisdiction to enter judgment for restitution of the Premises, . . . as well as

6

all back rent . . . owing pursuant to this *ex parte* procedure," addresses jurisdiction and not available remedies.

The principles of contract interpretation are well established. Under Civil Code section 1641, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." This directive is premised on the idea that " '[g]enerally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement, and this purpose should not be thwarted except in the plainest case of necessary repugnance. Even where different parts of the instrument appear to be contradictory and inconsistent with each other, the court will, if possible, harmonize the parts and construe the instrument in such way that all parts may stand and will not strike down any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part.' " (*Southern Pacific Land Co. v. Westlake Farms, Inc*. (1987) 188 Cal.App.3d 807, 822.)

Here, paragraphs 9, 15, and 16 can be interpreted without conflict. Paragraph 16 unambiguously authorizes the trial court "to enter judgment for . . . all back rent" pursuant to the ex parte procedures set forth in the settlement agreement. While paragraph 9 reserves Postmark's right to pursue unpaid rent and Paik's right to oppose such claims, the paragraph can be interpreted as preserving actions that may be brought outside of the settlement agreement—i.e., allowing Postmark to bring a separate action for back rent even if Paik complied with the settlement agreement. Likewise, paragraph 15, which awards possession of the premises to Postmark in the event of a breach, does not limit available remedies but instead predetermines the question of possession upon a breach of the settlement agreement.

7

Conversely, Paik's proposed interpretation cannot be harmonized with the language of paragraph 16 and would result in the de facto striking of the phrase "as well as all back rent . . . due and owing." Our goal is to avoid such a result. (*Southern Pacific Land Co. v. Westlake Farms, Inc.*, *supra*, 188 Cal.App.3d at p. 822 [courts attempt to "harmonize the parts and construe the instrument in such way that all parts may stand and will not strike down any portion"].) Accordingly, we decline to adopt Paik's interpretation of the settlement agreement.

### 2. *The Waiver Provision Encompassed the Entire Judgment*

We also reject Paik's argument that the waiver provision was limited only to the remedy of possession of the property. In *Pratt v. Gursey, Schneider & Co.* (2000) 80 Cal.App.4th 1105 (*Pratt*), the Court of Appeal analyzed an arbitration agreement waiver, which stated "the right to appeal from the arbitrator's award or any judgment thereby entered or any order made is expressly waived." (*Id*. at p. 1107.) When the losing party appealed the arbitrator's award, the appellate court dismissed the appeal based on the express waiver of the right to appeal in the agreement. (*Id*. at p. 1110.) The court explained, "The broad language utilized by the parties constitutes a waiver of the right to appeal from 'any judgment' or 'any order.' . . . [T]he right to appeal 'any judgment' or 'any order' has been expressly waived." (*Ibid*.)

A similar analysis is relevant here. The waiver provision in the parties' settlement agreement states, "Should a judgment for restitution be signed by the Court, [Paik] expressly waive[s] any right to an appeal . . . for any reason whatsoever." This waiver uses broad language similar to that in *Pratt*, and expressly waives "any right" and "for any reason."

8

Paik argues the reference to "a judgment for restitution" limits the waiver to "possession alone and excludes monetary damages." Paik asserts a "reasonable person . . . would believe that [Postmark] would seek any claim for unpaid rent in a separate action."

The California Supreme Court has defined " 'restitution' " to mean "the return of money or other property obtained through an improper means to the person from whom the property was taken. [Citations.] 'The object of restitution is to restore the status quo by *returning to the plaintiff* funds in which he or she has an ownership interest.' " (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 614.) While restitution may refer to " ' " 'the disgorging of something which has been taken,' " ' " it may also " ' " 'refer[] to compensation for injury done.' " ' " (*Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 403.)

Nothing in the record supports Paik's argument that the parties intended the definition of "restitution" to vary from that established by case law—i.e., the return of money and/or property. As discussed above, neither paragraph 9 nor 15 support Paik's position that Postmark was required to pursue back rent through a separate proceeding. Accordingly, the waiver provision applied to the entirety of the judgment and not merely the issue of possession of the premises.

### 3. *Civil Code Section 1953 Does Not Apply*

Finally, Paik contends the "waiver is unenforceable in its entirety as barred by Civ[il] Code section 1953." Civil Code section 1953 provides "[a]ny provision of a lease or rental agreement of a dwelling" that modifies "[a lessee's] procedural rights in litigation in any action involving his [or her] rights and obligations as a tenant," "shall be void as contrary to public policy." (Civ. Code, § 1953, subd. (a)(4).) The express terms of this section

9

limit its application to "lease or rental agreement[s]," not settlement agreements. Here, the waiver does not modify Paik's rental agreement, but rather is part of the parties' settlement agreement. (See, e.g., *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745, fn. 5 [waiver in the settlement of a landlord-tenant dispute, which included a remedy of possession, did not " 'constitute[] an unenforceable waiver' of Civil Code section 1953"].)

In sum, the trial court acted within the scope of the settlement agreement when it entered judgment awarding Postmark back rent, Paik waived her right to appeal from that judgment in its entirety, and the waiver does not run afoul of Civil Code section 1953.

## B. Material Breach of Settlement Agreement

Paik's primary argument on appeal is that she "substantially performed" the settlement agreement because she "removed most of her belongings and vacated the unit on January 31, 2022." Because of her alleged compliance, Paik contends she "should not be held to pay a $93,584.12 forfeiture."

Whether Paik materially breached the settlement agreement is only relevant in assessing whether Postmark was authorized to file an ex parte application to enforce the agreement. But Paik does not challenge Postmark's right to file the ex parte application. Nor does she challenge the trial court's authority to consider and grant Postmark's application. Rather, Paik only challenges the scope of the award—i.e., she "should not be held to pay a $93,584.12 forfeiture." Accordingly, Paik's argument that she "substantially performed" the settlement agreement is irrelevant to her challenge of whether the settlement authorized a back rent award and the amount of that award.

10

## C. *Liquidated Damages*

Paik contends "the back rent claim is an unlawful attempt to recover liquidated damages with no relation to the alleged breach of the Settlement Agreement." We disagree.

" 'The term "liquidated damages" is used to indicate an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement, and which may not ordinarily be modified or altered when damages actually result from nonperformance of the contract.' [Citation.] 'Liquidated damages constitute a sum which a contracting party agrees to pay . . . for breach of some contractual obligation.' " (*McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 521.)

Here, the settlement agreement clearly provides the trial court with discretion to determine the amount of back rent, if any, to award to Postmark upon a breach of the settlement agreement. In relevant part, the settlement agreement states: "Department 501 [of the San Francisco Superior Court] is conferred with jurisdiction to enter judgment for . . . all back rent . . . owing pursuant to this *ex parte* procedure, . . . as well as $1,700[1] in legal fees for any enforcement action." The settlement agreement neither provides a specified and fixed sum for back rent, nor guarantees that Postmark would be awarded back rent. Instead, the agreement states that Department 501 of the San Francisco Superior Court is authorized to decide the issue of back rent as part of an ex parte application to enforce the settlement agreement.

---

[1] The court is not considering whether the legal fees award constitutes liquidated damages because that issue was not raised on appeal. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

11

Paik compares her situation to that of *Graylee v. Castro* (2020) 52 Cal.App.5th 1107 (*Graylee*), but the two are not analogous.  In *Graylee*, on "[t]he day of trial, the parties entered into a stipulated judgment in which the tenants agreed to vacate the property by a certain date and time.  If they failed to do so, the landlord would be entitled to enter a $28,970 judgment against them." (*Id*. at p. 1110.)  The *Graylee* court concluded this provision constituted a liquidated damages award because "the stipulation predetermined the amount of damages the landlord would be entitled to receive if the tenants breached their settlement obligations." (*Id*. at p. 1114.)

The settlement agreement in *Graylee* clearly stated the amount of monetary judgment for failure to vacate the property.  (*Graylee, supra,* 52 Cal.App.5th at p. 1110.)  Here, however, the settlement agreement does not provide a set amount but rather authorizes Postmark "to pursue the unpaid rent from [Paik] through collections or other available court action."  While Postmark requested a specific amount of back rent in its application to the court, the amount was not predetermined.

Moreover, we note Paik had multiple opportunities to contest the amount of unpaid rent requested by Postmark, but failed to do so.  Paik did not meaningfully respond to Postmark's ex parte application when it requested rent in the amount of $93,584.12.  Notably, Paik did not submit any argument or evidence to contest the amount of unpaid rent.  Nor did she request a hearing on the rent issue or otherwise seek leave to submit evidence on the issue.  The settlement agreement granted the trial court the authority to determine and award back rent as part of Postmark's ex parte application to enforce the settlement agreement, and Paik has failed to demonstrate any error in the court's award.

12

### III. DISPOSITION

The judgment is affirmed.  Defendant may recover its costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(1), (2).)

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A165097
*Postmark Partners, LP v. Paik*