Filed 8/9/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PROPERTY CALIFORNIA SCJLW ONE CORPORATION,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>KRIS LEAMY et al.,<br><br>  Defendants and Appellants. | A152959<br><br>(Contra Costa County<br>Super. Ct. No. MSC1600657) |

Defendants Robin and Kris Leamy appeal from a final judgment entered in favor of plaintiff Property California SCJLW One Corporation. The judgment was entered based on an order granting plaintiff's motion for summary judgment regarding a settlement agreement (Agreement) involving attorney fees that contained a standard general release. Defendants contend summary judgment was improperly granted because the Agreement is unenforceable. We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants entered into a contract with J.T. Holmes to purchase a home in Lafayette. They waived contingencies under the contract, but discovered prior to close of escrow that there were matters with the house that had not been disclosed. They terminated the contract and sought to recover their deposit of $116,220, but Holmes refused. Their attorney, David Bowie (who also represented them below and in this appeal), negotiated an agreement to recover half of their deposit, or $58,110, but they refused to accept this resolution because they wanted to recover the entire deposit. Bowie declined to represent them for that claim.

In 2009, defendants hired the law firm of Morgan Miller Blair (MMB), which represented them for approximately two and a half years in connection with the failed real estate transaction. Defendants made claims against Holmes, including claims for consequential damages, that proceeded to arbitration. Holmes advanced counterclaims, including claims for breach of contract and fraud. MMB represented defendants in the arbitration and in two related lawsuits.

On August 24, 2011, as the matters were approaching final resolution, MMB informed defendants that they owed $431,141.92 in unpaid legal fees. MMB provided defendants with a draft settlement agreement, whereby the firm agreed to accept a discounted payment of $331,000 for its legal services. The draft includes an affirmative representation that the parties each had received the advice of independent counsel.

On August 26, 2011, Robin[1] sent MMB revisions to the draft settlement agreement. The revised draft retains the provisions regarding consultation with independent counsel. It also adds a provision stating that "Clients further contend that Law Firm failed to adhere to the Clients' direction on one or more occasions and further question the Law Firm's handling, strategy and representation of Clients in various ways."

On September 6, 2011, Robin sent an e-mail to Steven Holland, an MMB attorney who presently is counsel for plaintiff in this matter. The e-mail states: "My attorney is asking for the original contract we signed with MMB. Do you have that? If so, can you scan and send please."

On October 17, 2011, Holland sent defendants an e-mail with a revised draft settlement agreement attached. The parties negotiated further revisions to the draft over the following weeks.

---

[1] We use the defendants' first names for clarity. No disrespect is intended.

On October 23, 2011, Kris sent an e-mail to Holland stating, in part: "Robin is still seeking final approval from our attorney which he expects to hear back from tomorrow."

On October 27, 2011, Robin e-mailed Holland stating, in part: "I am in Florida currently, and have not been able to get feedback to my satisfaction from David Bowie due to his schedule. I am trying to communicate electronically with him today and tomorrow, but do not anticipate being able to close with him until early next week."

On October 28, 2011, the arbitrator in the real estate dispute issued a final arbitration award, awarding Holmes $116,250 on his breach of contract claim, and $75,000 in attorney fees and costs.

On November 4, 2011, defendants executed the Agreement. Defendants also submitted substitution of attorney forms, identifying Bowie as their new legal representative. Under the terms of the Agreement, defendants agreed to pay MMB a total of $150,000 in two $75,000 payments.

The Agreement contains mutual general releases. Each party agreed to fully release and discharge the other "from any and all rights, liabilities, claims, demands, causes of action, obligations, damages, losses, costs, attorneys' fees and/or expenses . . . which they or either of them, respectively, had, now have, or may after the signing of this Agreement have, against such Released Parties based on or arising out of the Dispute, the attorney-client relationship between Clients and Law Firm, and/or any other source, from the beginning of time to the Effective Date of this Agreement." The parties also explicitly waived all claims against each other "whether now known or unknown, and whether now existing or which may result in the future."

The parties further certified that they had been advised of and understood the provisions of Civil Code section 1542 (section 1542), and agreed to expressly waive its

3

protections.[2] They also warranted that, in executing the agreement, they had relied on their attorney of choice.

On April 20, 2012, Robin sent an e-mail to Holland stating that he anticipated receiving payment on a project in May, which would allow him to make the first settlement payment. It is undisputed that no payments were ever made. MMB dissolved as a law firm in the summer of 2012.

On April 8, 2016, MMB's assignee, plaintiff Property California SCJLW One Corporation, filed a complaint for breach of contract and to enforce the terms of the Agreement.

On July 1, 2016, defendants filed their answer to the complaint.

On April 18, 2017, plaintiff filed a motion for summary judgment, or in the alternative, summary adjudication. Plaintiff attached declarations of Holland and Christopher J. Hunter, another former MMB attorney, in support of its motion, as well as a separate statement of undisputed material facts.

Defendants filed their opposition on July 5, 2017. They asserted the agreement was unenforceable for lack of consideration because MMB and Holland had committed legal malpractice. Defendants also claimed the Agreement was subject to rescission because their signatures were fraudulently induced, and because MMB and Holland had failed to disclose their own malpractice exposure in violation of their ethical duties and in violation of multiple provisions of the California Rules of Professional Conduct. In their response to plaintiff's statement of facts, they admitted the Agreement had required them to pay MMB $150,000. They also admitted they had failed to make any payments under the Agreement.

---

[2] Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4

With their opposition, defendants attached the declarations of Robin, Kris, Bowie, and Charles A. Koss, an expert witness hired by defendants to "analyze the legal representation of [defendants] by [MMB in the underlying real estate matter], as well as the facts and circumstances surrounding the apparent execution of a purported Settlement Agreement at the conclusion of the matter." Plaintiff filed evidentiary objections to all four declarations.

On July 19, 2017, the trial court issued a tentative ruling requesting further briefing.

Plaintiff's summary judgment motion was heard on September 13, 2017. Defendants have not provided to this court a reporter's transcript of that hearing.

On September 13, 2017, the trial court filed its order granting plaintiff's motion. In its ruling, the court sustained several of plaintiff's evidentiary objections to the declarations submitted by defendants, including its objection to the entire declaration of Koss. A judgment for $150,000, plus $81,460.20 in interest, was filed that same day. This appeal followed.

## DISCUSSION

### I. *Summary Judgment Standard of Review*

We review de novo the trial court's decision to grant plaintiff's motion for summary judgment. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

Summary judgment must be granted if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the plaintiff is the moving party, he or she may meet

5

the burden of showing there is no defense to a cause of action by proving each element of the cause of action entitling the party to judgment. (See *id.*, subd. (p)(1).) Once the plaintiff has met that burden, the burden shifts to the defendant to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. (*Ibid.*) We must consider all evidence in the light most favorable to the nonmoving parties, which in this case are defendants. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

## II.     *Plaintiff's Prima Facie Showing*

The elements of a cause of action for breach of contract are: " '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.' " (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178.) A settlement agreement is governed by the same rules applicable to other contracts. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)

In its motion for summary judgment, plaintiff set forth a prima facie case for breach of contract. Plaintiff showed the existence of the Agreement, which provided that MMB agreed to accept $150,000 in settlement of its claim that it was owed in excess of $381,538 for legal services. Plaintiff showed that MMB performed its obligation under the agreement by accepting the compromise in lieu of any other monies claimed due, and by cooperating in the orderly transition to new representation. Plaintiff also provided evidence defendants failed to pay the $150,000 owed to MMB, and that plaintiff has been damaged in this amount. Having set forth a prima facie case for breach of the Agreement, the burden shifted to defendants to raise a triable issue of fact.

## III.    *Defendants Have Failed to Raise a Triable Issue of Material Fact*

### A.  *Exclusion of Koss Declaration*

Below, defendants relied almost entirely on their expert witnesses' declaration to support their claim of legal malpractice as a basis for their lack of consideration defense.

6

As noted above, the trial court excluded that declaration. On appeal, defendants assert that the court erred.

We review the trial court's ruling on the admissibility of expert testimony for abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).) A court abuses its discretion if its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Ibid.*) "When applying the deferential abuse of discretion standard, 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.) "It is the appellant's burden on appeal to show the trial court abused its discretion." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

"A properly qualified expert may offer an opinion relating to a subject that is beyond common experience, if that expert's opinion will assist the trier of fact." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 (*Bushling*).) "However, even when the witness qualifies as an expert, he or she does not possess a carte blanche to express any opinion within the area of expertise. [Citation.] For example, an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence. [Citations.] Similarly, when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.' " (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.) "An expert who gives only a conclusory opinion does not *assist* the jury to determine what occurred, but instead supplants the jury by *declaring* what occurred." (*Id.* at pp. 1117–1118.)

These rules apply to expert witness declarations submitted in connection with a motion for summary judgment.  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123; *Bushling*, *supra*, 117 Cal.App.4th at p. 510.)  "Cases dismissing expert declarations in connection with summary judgment motions do so on the basis that the declarations established that the opinions were either speculative, lacked foundation, or were stated without sufficient certainty."  (*Sanchez v. Hillerich & Bradsby Co.* (2002) 104 Cal.App.4th 703, 718.)  "[U]nder Evidence Code section 801, the trial court acts as a gatekeeper to exclude speculative or irrelevant expert opinion."  (*Sargon*, *supra*, 55 Cal.4th at p. 770.)  "[T]he gatekeeper's role 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' "  (*Id*. at p. 772.)

In sustaining plaintiff's objection to the entire declaration, the trial court found that Koss's opinions lacked adequate foundation and adequate analysis.  Because it made this finding, the court concluded that plaintiff's specific objections were moot and did not address them.  As to the lack of foundation, the court observed that most of the unidentified documents Koss reviewed appear to have been unverified court filings and/or the declarations of defendants and Bowie, which the court had ruled were largely inadmissible.  The court also specifically mentioned two "startling gaps" in Koss's opinion:  (1) his "failure to review MMB's invoices and (2) failure to seek out any information concerning defendants' reasons for rejecting the $58,000 settlement offer negotiated by Mr. Bowie, before defendants fired Mr. Bowie and hired MMB to pursue their claims more aggressively."  We find no abuse of discretion.

Koss states that he reviewed the pleadings from the arbitration and the related court proceedings, as well as the Agreement and the declarations of Robin, Kris, and Bowie, relying on the representations made in those declarations.  As the trial court indicated, he did not review MMB's invoices.  Nor does the declaration reflect that he

8

inquired as to why defendants rejected the settlement offer negotiated by Bowie. Koss opines that MMB breached the standard of care because "it appears the legal and economic realities of the dispute were entirely misanalysed." He relates that defendants retained MMB solely because they wished to pursue the recovery of the entire deposit from Holmes, rather than accept half of the deposit as negotiated by Bowie. He then faults MMB for pursuing extensive litigation and by bringing multiple causes of action against Holmes, though Koss does not address whether defendants authorized MMB to pursue this strategy.

Defendants attack the trial court's reasoning, claiming they do not have copies of MMB's invoices,[3] merely echoing Koss's conclusion that "[t]o invoice close to $600,000 in fees for a case worth $58,110 is ludicrous." This simplistic view does not satisfactorily address the lower court's finding. For example, the court noted that Koss "says nothing about MMB successfully defending against the seller's claim for attorney fees; the seller sought approximately $834,000, but was awarded only $75,000." Defendants do not dispute this finding and other similar findings, instead arguing that disagreement with an expert's opinion is not grounds for excluding the entire declaration. However, the court was not merely disagreeing with Koss's conclusions. Instead, it was pointing out why Koss's opinions lacked foundation. In sum, defendants fail to show that the court's ruling was "so irrational or arbitrary that no reasonable person could agree with it."[4] (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

It does appear that defendants desired an aggressive approach in litigating the failed real estate transaction. We note Robin states in his declaration that he not only

---

[3] There is no explanation as to why these invoices could not have been obtained through discovery.

[4] In light of our conclusion that the trial court did not commit an abuse of discretion when it excluded Koss's declaration, we need not consider the remainder of the court's evidentiary rulings.

9

wanted the full deposit back, he and Kris wanted to pursue "consequential damages," including damages for fraud and emotional distress. However, Koss's analysis avoids this point, merely stating that "any reasonable attorney with reasonable experience and understanding in this area would conclude that [defendants] never had any possibility of obtaining any relief beyond the return of their deposit—i.e. $166,220." Beyond faulting MMB for filing an ex parte application for a writ of attachment, Koss broadly opines that MMB violated the standard of care by over-litigating the case and generating excessive legal fees.

Further, defendants' expert added nothing beyond declaring that MMB's billing constituted malpractice because it was excessive. In short, he "was advocating, not testifying." (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1185, italics omitted.) He reached what in this case was an ultimate conclusion of law, a point on which expert testimony is not allowed. (*West v. Sundown Little League of Stockton, Inc.* (2002) 96 Cal.App.4th 351, 358–359.) "Courts must be cautious where an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion." (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 865.) The trial court was well within its discretion to exclude Koss's declaration.

### B. Lack of Consideration Defense

Defendants assert the trial court erred by failing to properly analyze their defense of lack of consideration.[5] Consideration is present when the promisee confers a benefit or suffers a prejudice. (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 420–421, citing Civ. Code, § 1605.) Although "either alone is sufficient to constitute consideration," the benefit or prejudice " ' "must actually be bargained for as the exchange for the promise." ' " (*Id.* at p. 421.) "Put another way, the benefit or prejudice must have

_____

[5] In their answer, they stated lack of consideration as their first affirmative defense, claiming the Agreement is "unenforceable against [them] in that their execution of the terms thereof was not supported by adequate consideration."

induced the promisor's promise." (*Ibid.* [" ' "The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange." ' "].) It is established that "the compromise of disputes or claims asserted in good faith constitutes consideration for a new promise." (*Nesbitt Fruit Products, Inc. v. Del Monte Beverage Co.* (1960) 177 Cal.App.2d 353, 361; see *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 299; *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 742 (*Kaufman*).)

Defendants argue that "[c]ompromise of a *wholly invalid* claim is inadequate consideration to support a contract." (Italics added.) The argument is based on the claim that MMB breached the standard of care and committed legal malpractice during its representation, such that, at a minimum, "a question of fact exists as to whether MMB's representation fell so far below the standard of care such that no consideration could exist for the compromise of any claim for additional attorneys fees." Essentially, defendants argue that MMB gave them nothing in exchange for their promise to pay $150,000 because the law firm was not entitled to any additional fees due to its commission of gross malpractice. Preliminarily, we note the cases defendants rely on are inapposite.

In *Orange County Foundation v. Irvine Co.* (1983) 139 Cal.App.3d 195, 201 (*Orange County Foundation*), the Court of Appeal reversed the grant of summary judgment on a taxpayer's gift clause action stemming from a settlement between a private party (Irvine) and the State of California. In that case, the state and Irvine disputed title to three islands in upper Newport Bay. Pursuant to a settlement agreement, the state paid money to Irvine to clear the state's title to those islands. The Orange County Foundation for the Preservation of Public Property (Foundation) sued Irvine and the state to set aside the settlement agreement. The Foundation alleged that Irvine knew the islands were tidelands and submerged lands protected by a public trust in which Irvine had no legal claim or disputable interest. (*Id.* at p. 199.)

11

The trial court sustained the state's demurrer without leave to amend, and granted Irvine's summary judgment motion. (*Orange County Foundation*, *supra*, 139 Cal.App.3d at p. 199.) The Court of Appeal reversed the summary judgment granted to Irvine, concluding there was a triable issue as to "whether [its] compromised title claims to certain islands were knowingly spurious." (*Id.* at p. 198.) The court observed, "[T]he settlement of a good faith dispute between the State and a private party is an appropriate use of public funds, neither wasteful within the meaning of [Code of Civil Procedure] section 526a, nor a gift barred by [California Constitution] article XVI, section 6, because the relinquishment of a colorable legal claim in return for settlement funds paid by the State is good consideration and accomplishes a valid public purpose." (*Orange County Foundation*, at p. 200.)[6] The court also noted that a promise to compromise an invalid or unfounded claim is *not* valuable consideration. (*Id.* at p. 201.)

The present case does not involve the use of public funds. Our research has disclosed no cases applying *Orange County Foundation* to a private settlement agreement. Accordingly, the case does not provide persuasive authority for defendants' legal theory. To the extent it holds that there is no consideration for the release of an invalid claim, the opinion does not hold that a released claim must be absolutely valid, but rather that it must be at least "colorable." (*Orange County Foundation*, *supra*, 139 Cal.App.3d at p. 200.) While we will address defendants' legal malpractice

---

[6] Section 6 of article XVI of the California Constitution provides that the Legislature has no power "to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation . . . ." The term "gift" in the constitutional provision "includes all appropriations of public money for which there is no authority or enforceable claim," even if there is a moral or equitable obligation. (*Conlin v. Board of Supervisors* (1893) 99 Cal. 17, 21–22.) "An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the meaning of that term, as used in this section, and it is none the less a gift that a sufficient motive appears for its appropriation, if the motive does not rest upon a valid consideration." (*Id*. at p. 22.)

assertions in more detail below, suffice it to say we have little difficulty in concluding that MMB possessed at least a "colorable claim" to its fees.[7]

*Union Collection Co. v. Buckman* (1907) 150 Cal. 159, 164 (*Buckman*) (cited to by *Orange County Foundation* and also referenced in defendants' brief) is also inapposite. In *Buckman,* the defendant (Buckman) lost $1,300 while participating in an unspecified "gambling game" and gave the winner (McMahon) three promissory notes that were transferred to the plaintiff's assignor (Reid) for collection. (*Buckman*, at p. 160.) After Reid commenced an action against Buckman upon one of the notes, the parties entered into a settlement agreement under which Buckman gave four new notes in consideration for dismissal of the action and cancellation of the original three notes. When Buckman defaulted on his payment obligations under the new notes, Reid brought another lawsuit upon two of the new notes, and the parties again settled the matter upon Buckman's execution of two new written instruments promising to pay the sum of $410 plus interest. (*Id.* at pp. 160–161.) When Buckman apparently defaulted again, Reid assigned his rights to the plaintiff, which brought an action upon the new written instruments. (*Id.* at p. 160.) Following a trial, the trial court entered judgment in favor of Buckman on the ground the original notes were based on illegal consideration because Buckman gave them to McMahon solely to evidence an alleged indebtedness for gambling money he lost to McMahon. (*Id.* at p. 161.) In the present case, there are no allegations that the Agreement was based on illegal consideration. Thus, *Buckman* does not support defendants' legal assertions.

*Murphy v. T. Rowe Price Prime Reserve Fund, Inc.* (1993) 8 F.3d 1420, also cited to by defendants, actually supports plaintiff's position. In that case, the Ninth Circuit Court of Appeals held: "An oral agreement is not enforceable without consideration.

---

[7] To be colorable, a claim must be asserted in good faith and must be legally tenable under the theory advanced. (See *Rogers v. Platt* (1988) 199 Cal.App.3d 1204, 1212.)

13

Compromise of a wholly invalid claim, one with no foundation, is not valid consideration. [Citations.] However, *surrender of a possibly meritless claim which is disputed in good faith is valid consideration.* [Citations.] The rationale of these cases is that *parties who settled in order to avoid litigation should be given the benefit of their bargain.*" (*Id*. at p. 1423, italics added.) Here, defendants essentially allege that MMB's fee claim was meritless because the firm committed legal malpractice. Even if true, that assertion was (and is) clearly disputed by MMB,[8] and defendants do not argue that MMB lacked good faith in pursuing settlement of the dispute.

Finally, *Jordan v. California Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 450 (*Jordan*) is also distinguishable. Similar to *Orange County Foundation*, in *Jordan,* the appellate court reviewed and vacated an arbitration award as an unconstitutional gift of public funds. The Legislature had, by legislative enactment, authorized a certain maximum amount of attorney fees that could be awarded in connection with a lawsuit involving the state's smog impact fee. (*Id.* at pp. 438–439.) The arbitrator's award substantially exceeded the amount authorized by the Legislature. (*Id*. at pp. 439–441.) While the settlement of the attorney fee dispute was found to have served a public purpose, awarding fees in excess of the state's maximum exposure was deemed "akin to payment of a wholly invalid claim and violates the gift clause." (*Id.* at p. 450, citing to *Orange County Foundation, supra,* 139 Cal.App.3d at pp. 200–201.) The *Jordan* court found the award was invalid because the attorneys "had no colorable claim" to the excess fees. (*Jordan*, at pp. 450–451.) Again, this matter does not concern the gift clause of the California Constitution.

On appeal, defendants essentially seek the opportunity to litigate their claim for malpractice, the same claim that they agreed to settle and to which the statute of

---

[8] The Agreement expressly states that MMB denied defendants' contentions regarding its allegedly deficient performance while serving as counsel for defendants.

14

limitations has long since expired (see Code Civ. Proc, § 340.6). They contend they "deserve their day in court for these issues to be fully heard with a trier of fact." They further argue that "because of MMB's breaches of its duty of care, [defendants] could have sued MMB for breach of contract at the conclusion of the [Holmes matter] and would have been entitled to return of most if not all of the legal fees they had already paid." However, it is clear defendants were aware they were settling their potential legal malpractice claim when they negotiated the Agreement. As noted above, the Agreement recites that defendants "contend that Law Firm failed to adhere to the Clients' direction on one or more occasions and further question the Law Firm's handling, strategy and representation of Clients in various ways." We note there is a strong public policy favoring settling of disputes, especially pretrial settlements, because they diminish the expense of litigation. (*Kaufman*, *supra*, 195 Cal.App.4th at p. 745.)

Defendants argue consideration is not present every time a law firm reduces the fees billed in exchange for a general release, because law firms that commit "gross malpractice" are entitled to nothing. However, our task is not to reach an ex post conclusion as to the merits of the claim for attorney fees in order to determine whether there was consideration for the release ex ante. Unlike *Jordan*, and the other cases defendants rely on, even if MMB's claim for attorney fees was meritless, there is no evidence that MMB pursued its fees in bad faith or that it lacked a "colorable claim" to the fees. Therefore, even if Koss's declaration had been admissible, defendants still fail to make even a prima facie case for lack of consideration.

### C.  *The Defense of Rescission*

Defendants argue that there is a triable issue of material fact as to whether the Agreement can be rescinded. The argument is based on the theory that MMB failed to properly disclose to defendants the circumstances of the law firm's own potential legal malpractice.

15

In their answer, defendants state this affirmative defense as follows: "The settlement Agreement violates California Professional Conduct Rule 3-400,[9] in that it fails to properly advise Defendants regarding rights to independent representation and Defendants were fraudulently induced into executing it in reliance on Law Firm's representations that the legal strategies pursued and services rendered were necessary and reasonable such that the monies Law Firm sought to collect were actually due and owing notwithstanding the prior payment of significant monies. In actual fact, Law Firm had already been paid more monies for legal services than were reasonably due at the time of entry into the Settlement Agreement. By reason of the foregoing, Defendants are entitled to a rescission of the Settlement Agreement."

In support of this defense, defendants first argue that MMB had an ethical obligation under the California Rules of Professional Conduct (CRPC) to disclose in writing the facts and circumstances of their potential malpractice. While defendants also assert they were "fraudulently induced" into entering into the settlement agreement, the claim is based solely on MMB's alleged failures to disclose its malpractice in accordance with the conduct regulations.

Even if MMB failed to adhere to the CRPC, punishment for violation of these rules is a matter within the purview of the State Bar, not of a court presiding over the affected case. (See Bus. & Prof. Code, § 6077; *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 658–659.) The issue here, however, is whether the alleged violation, failing to inform defendants of MMB's malpractice, is sufficient to nullify the Agreement. However, defendants do not cite to any authority holding that failure to comply with the ethical rules entitles a client to rescind a settlement agreement for

_____

[9] California Rules of Professional Conduct, rule 3-400(B) provides that an attorney may not "[s]ettle a claim or potential claim for the member's liability to the client for the member's professional malpractice, unless the client is informed in writing that the client may seek the advice of an independent lawyer of the client's choice regarding the settlement and is given a reasonable opportunity to seek that advice."

16

attorney fees.  Moreover, as the trial court recognized, "[i]t makes no sense to argue that MMB concealed the theoretical possibility of legal malpractice when the release of all claims for any such legal malpractice was the consideration MMB bargained for and received in exchange for accepting less than half the fees [it] had billed defendants."

Defendants also allege on appeal that they were not represented by independent counsel, and were not properly advised by MMB to do so.  This allegation flies in the face of the references in the Agreement's drafts and final version to independent counsel, as well as defendants' e-mail representations to Holland during the Agreement's drafting, in which they repeatedly indicated that their attorney (Bowie) was reviewing and revising the drafts.  To explain this discrepancy, in his opposition declaration Robin admits he *falsely* represented that Bowie had redlined the Agreement's drafts:  "I redlined certain items within the Settlement Agreement myself and suggested it was an attorney's request to change the item *in order to have the changes accepted*."  (Italics added.)  Further, it does appear Bowie was representing defendants during this time as he admits that he "ghost wrote" an opposition to the petition to confirm the Holmes arbitration award that was filed on October 28, 2011, 11 days prior to the execution of the Agreement.[10]  Even if MMB was somehow deficient in informing defendants of their right to independent counsel, a point we need not decide, defendants were obviously aware of their right and, accordingly, suffered no prejudice.

**DISPOSITION**

The judgment is affirmed.

---

[10] Plaintiff offered evidence from Bowie's privilege log that defendants had engaged in over 20 "privileged" communications with Bowie as to "Complaints Regarding Amount of Fees Charged" and an "Incredulous Response Regarding Amounts of Fees Charged."

_____

Dondero, J.

We concur:


_____

Margulies, Acting P. J.


_____

Banke, J.

Trial Court:          Contra Costa County Superior Court

Trial Judge:          Hon. Judith Craddick

Counsel:

      Bowie & Schaffer, David J. Bowie and Eric C. Schaffer, for Defendants and Appellants

      Ring, Hunter Holland & Schenone, LLP, Steven N. Holland and Justin Schnitzler, Plaintiff and Respondent