Filed 10/27/25  Beauchemin v. Persons Plastic Surgery CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERIN BEAUCHEMIN et al., | |
| Plaintiffs and Appellants, | A170578 |
| v. | |
| PERSONS PLASTIC SURGERY et al., | (Contra Costa County Super. Ct. No. C2102629) |
| Defendants and Respondents. | |

In this medical malpractice case, plaintiffs Erin Beauchemin and Ethan Locks (collectively, plaintiffs) appeal after the trial court granted summary judgment in favor of defendants Dr. Barbara Persons and her practice, Persons Plastic Surgery (collectively, defendants).  Plaintiffs contend Dr. Persons negligently performed a breast augmentation procedure on Ms. Beauchemin, specifically by placing the implants improperly, causing Ms. Beauchemin to suffer severe pain.  Mr. Locks, who is Ms. Beauchemin's husband, asserts a cause of action for loss of consortium (a claim that the parties agree "rises and falls" with Ms. Beauchemin's professional negligence claim).

In granting summary judgment, the trial court determined first that an expert declaration submitted by defendants met their initial burden of

1

production as to the breach and causation elements of plaintiffs' medical negligence claim, thus shifting to plaintiffs the burden to produce evidence creating triable issues of fact as to those elements. Plaintiffs did not submit an expert declaration in response, relying instead on their own declarations, in which they recounted out-of-court statements by a later treating physician. The trial court sustained hearsay objections to those portions of plaintiffs' declarations and concluded plaintiffs did not show triable issues of fact existed as to the breach and causation elements of the medical negligence claim.

On appeal, plaintiffs contend defendants did not meet their initial burden of production, because the declaration of the defense medical expert contained unsupported opinions that should have been excluded. Plaintiffs further argue that, even if defendants met their initial burden, summary judgment was improper because the out-of-court statements on which plaintiffs rely are admissible and establish the existence of triable issues of fact.[1] We affirm.

## I. BACKGROUND

### A. *Ms. Beauchemin's Medical Treatment*

On September 21, 2020, Ms. Beauchemin had a breast augmentation procedure, which Dr. Persons performed. Dr. Persons placed "650cc silicone filled smooth round high profile Sientra implants." As summarized by the

---

[1] In their opening appellate brief, plaintiffs also asserted that, regardless of whether triable issues of fact exist as to the breach and causation elements of their medical negligence claim, summary judgment was improper because there are triable issues pertaining to plaintiffs' theory that Dr. Persons was negligent in failing to obtain Ms. Beauchemin's informed consent for the breast augmentation procedure. In their reply brief, plaintiffs state they are withdrawing that argument from this court's consideration on appeal.

trial court, the placement of the implants was "subglandular and subfascial—under the glands and above the muscle and under the fascia to allow the nipple to be elevated slightly." In an "operative report" describing the procedure, Dr. Persons stated the implants were "confirmed to be symmetrical and in proper position." There were no complications. Liposuction was also performed on Ms. Beauchemin's "anterior axillary creases (bra rolls)."

At follow-up appointments in late September and early October, Ms. Beauchemin reported she was experiencing "continuous" pain and asked for more pain medication. Later, in her deposition, Ms. Beauchemin described the pain as "excruciating." The pain was concentrated in Ms. Beauchemin's left breast. In her visit notes, Dr. Persons stated Ms. Beauchemin's pain was out of proportion to the physical findings. Bruising was mostly resolved; the incision was clean, dry, and intact; and there was some swelling. At an appointment on October 5, 2020, Dr. Persons prescribed more pain medication but explained it would be the last prescription due to Ms. Beauchemin's controlled substance prescriptions on her CURES[2] history.

On October 8, 2020, Dr. Persons performed an exploration of Ms. Beauchemin's left anterior axillary crease (an area where liposuction was performed during the previous procedure, and the area where Ms. Beauchemin reported pain). Dr. Persons' notes state "[n]o significant abnormality" was found. Dr. Persons removed a small area of firm fat.

On January 16, 2021, Ms. Beauchemin returned for another appointment at which she complained of continued left breast pain in the upper lateral quadrant. Dr. Persons suggested that Ms. Beauchemin get an ultrasound and mammogram of the area, but Ms. Beauchemin was reluctant

---

[2] Controlled Substance Utilization Review and Evaluation System.

to do so.  Although no abnormalities were noted, Dr. Persons offered to explore the implant pocket and left upper quadrant to evaluate for neuroma. Dr. Persons stated in her notes that Ms. Beauchemin was exhibiting drug-seeking behavior, and that she would not prescribe further medications.  Ms. Beauchemin was also interested in minor leg liposuction.

On January 21, 2021, Ms. Beauchemin had another procedure with Dr. Persons for liposuction of her thighs and knees and exploration of the left breast.  Dr. Persons' notes state the implant was in the correct position.  On January 26, 2021, Ms. Beauchemin had a follow-up appointment at which it was noted that her incisions were doing well and that any narcotics would be prescribed by a pain doctor.

On August 11, 2021, Ms. Beauchemin returned to Dr. Persons with complaints of left breast upper quadrant pain.  The assessment was to send Ms. Beauchemin for a mammogram and ultrasound as previously recommended.  Ms. Beauchemin did not want to pay out of pocket, so Dr. Persons offered a referral for the imaging.  On August 24, 2021, Dr. Persons offered and recommended that she remove the implants to see if that would relieve the pain, and then if so, she would perform a mastopexy.  Dr. Persons told Ms. Beauchemin that she would not, however, replace the implants, because then it would not be known if they were the cause of the pain.  According to Dr. Persons, Ms. Beauchemin did not want the implants removed.  Ms. Beauchemin did not return for any further visits with Dr. Persons.

On September 29, 2021, Ms. Beauchemin had cosmetic surgery performed by Dr. Chris Gold at Kaiser.  Ms. Beauchemin was offered MRI imaging preoperatively to help find the source of the pain.  She declined and wished to move forward with surgery.  According to Dr. Gold's notes, the

4

indication for the surgery was "undesired cosmetic appearance," and the planned procedures were breast implant exchange, breast capsulectomy, breast lift, mastopexy (all bilateral) and chest excision of a possible soft tissue mass (left). Dr. Gold believed Ms. Beauchemin's breast implants were placed under the muscle because that is what she had told him, and no outside records were available for his review. Additional diagnoses from the past medical history included acute stress disorder and anxiety disorder.

Dr. Gold stated in his notes that he removed the implants, which were intact. At the time of removal, the implants "were reversed with the backside facing the anterior aspect of the patient with incorrect polarity." Other findings included "[s]ubglandular implants with no violation of the pectoralis major muscle," "[e]xpanded breast pocket [with] inferior and lateral malposition noted," and "[l]owered inframammary fold on the left side of approximately 1.5 cm lower than the right."

Dr. Gold did not replace the implants at that time. He recommended delaying any submuscular placement of new implants for a minimum of three months to allow the area of the subglandular plane to close. Dr. Gold testified that submuscular implant placement is the type he is comfortable doing, and he did not replace the implants subglandularly. No masses were found or removed during Dr. Gold's surgery.

Dr. Gold stated in his notes that, during the procedure on September 29, 2021: "I spoke with the husband [Mr. Locks] at 1310 (approximately) to explain to him that the patient's implants were noted to be in the subglandular plane, and that they were reversed. After extensive discussion with the husband regarding risk of implant pocket malposition recurrence, with conversion to subpectoral implants at this time, we proceeded with Wise pattern mastopexy alone. My recommendation was to

delay subpectoral (dual plane 1) augmentation until minimum 3 months to allow area subglandular plane to completely as attempt at sutures/mesh may not yield desired long term result."

In December 2021, Ms. Beauchemin returned to Dr. Gold and had 490 cc implants placed.  Several months later, her left-sided breast pain in the upper quadrant returned.  Ms. Beauchemin then opted to have the implants removed and another mastopexy performed in February 2023.

## B. *Procedural Background*

In their complaint, filed in December 2021, plaintiffs alleged Dr. Persons breached the standard of care by improperly placing the breast implants and placing them backwards, causing pain to Ms. Beauchemin.

Defendants moved for summary judgment, contending there were no triable issues as to the elements of breach of duty and causation.  Defendants supported their motion with an expert declaration from Dr. Cynthia Goodman, who opined that Dr. Persons complied with the standard of care and did not cause Ms. Beauchemin's claimed injuries.

In their opposition, plaintiffs argued that Dr. Goodman's opinions should be excluded because they were based on factual assumptions that lacked foundation, so defendants failed to meet their initial burden of production in moving for summary judgment.  Plaintiffs claimed alternatively that out-of-court statements by Dr. Gold, as described in plaintiffs' declarations, created triable issues as to breach and causation.

After a hearing, the court granted defendants' motion.  The court overruled plaintiffs' objections to Dr. Goodman's declaration, explaining that Dr. Goodman had provided "substantial testimony setting forth an understanding of the facts, and the reasons for her opinions."  The court noted plaintiffs had not come forward with conflicting expert evidence.  The

6

court sustained hearsay objections to the portions of plaintiffs' declarations referring to out-of-court statements by Dr. Gold.

The court entered judgment for defendants, and plaintiffs appealed.

## II. DISCUSSION

### A. *Legal Standards*

Summary judgment is warranted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) " 'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' " (*Apex Solutions, Inc. v. Falls Lake National Ins. Co.* (2024) 100 Cal.App.5th 1249, 1256.) A defendant moving for summary judgment may meet its initial burden of production by showing "one or more elements of the cause of action . . . cannot be established"; the burden then shifts to the plaintiff to show a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) We consider all evidence in the light most favorable to the nonmoving party. (*Id.* at p. 843.)

" 'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.)

Expert testimony on these points is essential, including at summary judgment. "Where, as here, the material issues framed by the complaint are whether the conduct of a medical professional fell below the standard of care and proximately caused the plaintiff's injury, expert testimony is required to

7

establish the reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances [citation], as well as whether the defendant's conduct proximately caused the plaintiff's injuries within a reasonable medical probability [citation]." (*Zaragoza v. Adam* (2025) 109 Cal.App.5th 113, 118–119; accord, *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 607 [" ' "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." ' "].)

### B. *Defendants Met Their Initial Burden of Production*

Plaintiffs contend the trial court erred in overruling their objections to Dr. Goodman's opinions that Dr. Persons complied with the standard of care and did not cause injury to Ms. Beauchemin. Plaintiffs argue that, without Dr. Goodman's opinions, defendants did not meet their initial burden to negate the elements of breach and causation. We find no error.

The parties agree the abuse of discretion standard of review applies to the trial court's ruling admitting Dr. Goodman's opinions. (See *Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 816 [noting that "most appellate courts apply an abuse of discretion standard of review to the trial court's evidentiary rulings . . . in the context of a summary judgment motion," but concluding the particular evidentiary issue presented was appropriately reviewed de novo].) The court did not abuse its discretion by admitting Dr. Goodman's declaration, which satisfied defendants' initial burden on summary judgment to negate the breach and causation elements of plaintiffs' medical negligence claim.

Plaintiffs assert Dr. Goodman's opinions are invalid because they are based on an unwarranted factual assumption, specifically the assumption

8

that Dr. Persons correctly placed Ms. Beauchemin's implants.[3]  We disagree, and we conclude the trial court correctly found Dr. Goodman's opinions were well supported and admissible.

Dr. Goodman has been licensed to practice medicine in California since 2000, specializes in plastic surgery, and is certified by the American Board of Plastic Surgery.  She has served as the chief of plastic surgery at Marin General Hospital and Novato Community Hospital and has authored numerous articles in major plastic surgery journals on such topics as breast implants, breast augmentation, reduction, and reconstructive surgery.  She is a member of the American Society of Plastic Surgeons, the American Society for Aesthetic Plastic Surgery, Inc., the American Board of Plastic Surgery, and the California Society of Plastic Surgeons.  She states in her declaration that she is familiar with the standard of care for physicians performing aesthetic plastic surgery procedures in 2020 through 2022, including the performance of breast augmentation and liposuction.

In preparing her declaration, Dr. Goodman reviewed "the following records pertaining to patient Erin Beauchemin:  Persons Plastic Surgery chart, including pre and post procedure photographs, Kaiser outpatient and inpatient records, which include pain management and records of care by Chris Gold, M.D., pre and post photographs contained in the Kaiser records,

---

[3] In their opening appellate brief, plaintiffs claimed Dr. Goodman made a second improper assumption—that Dr. Persons obtained Ms. Beauchemin's informed consent for the implant procedure.  But as noted, in their reply brief, plaintiffs withdrew their argument that triable issues of fact exist as to their theory that Dr. Persons was negligent for failing to obtain informed consent.  And in the portion of their reply brief addressing the admissibility of Dr. Goodman's declaration, plaintiffs do not press the argument that the declaration was inadmissible for failing to consider the viability of plaintiffs' now-abandoned informed consent theory.

and the deposition testimony of Erin Beauchemin, Ethan Locks, Barbara Persons, M.D., and Chris Gold, M.D."

After reviewing this information, Dr. Goodman concluded "to a reasonable degree of medical probability that Dr. Persons, and her practice, Persons Plastic Surgery, at all times complied with the standard of care in providing care and treatment to patient Erin Beauchemin.  It is well within the standard of care to attempt to achieve the look of a breast lift with implants placed subglandularly and above the muscle, especially in circumstances where a patient is not desirous of a breast mastopexy."

Dr. Goodman further opined that, "to a reasonable degree of medical probability . . . no act or omission of Dr. Persons, or her practice, Persons Plastic Surgery, was a substantial cause of Ms. Beauchemin's claimed injuries."  Dr. Goodman noted that Ms. Beauchemin's reports of pain were not typical of the type of procedure she had.  In addition, given Ms. Beauchemin's lengthy preoperative history of pain and use of opioid medications, as well as "the lack of any found cause of pain," Ms. Beauchemin may be more susceptible to the perception of pain, but no breach of the standard of care caused that pain.

Dr. Goodman also addressed the contention by plaintiffs that the implants were placed " 'upside down and backwards.' "  Dr. Goodman stated "there is no polarity, thus no 'upside down.' "  Although "there is a slightly flatter backside where a logo is placed," Dr. Goodman reviewed Dr. Persons' notes from the initial implant procedure in September 2020 where she described placing the implants properly with the logo facing the back or chest wall.  In addition, Dr. Goodman noted that, when Dr. Persons performed the follow-up procedure in January 2021, she opened the "left pocket" and confirmed the implant was still in the correct location.

10

When Ms. Beauchemin underwent surgery several months later at Kaiser in September 2021, Dr. Gold found the implants were logo side up. But Dr. Goodman averred that (as noted by Dr. Gold in his deposition) implants can flip, especially when the pocket where the implants are placed has stretched. Dr. Goodman stated such stretching and shifting had occurred in this case, and that "[w]hen Ms. Beauchemin underwent surgery with Dr. Gold, she again developed recurring stretching of her breast tissue. Thus, to a reasonable degree of medical probability, given the quality of the patient's tissue and the size of the implants placed, the implants flipped in the absence of negligence. To a reasonable degree of medical probability such flipping would not cause physical harm."

In overruling plaintiffs' objections to Dr. Goodman's declaration, the trial court explained: "Plaintiffs do not dispute that Dr. Goodman is an expert in plastic surgery and do not present any opposing declaration from an expert on the standard of care. Dr. Goodman's declaration and opinions are based on her extensive professional knowledge as well as a review of all the medical records related to Ms. Beauchemin's care. She provides substantial testimony setting forth an understanding of the facts, and the reasons for her opinions. There is no evidence that her opinion was based on anything other than what was contained within these admissible pieces of evidence nor that she ignored key pieces of evidence." We agree.

As plaintiffs note, an expert opinion may be excluded from evidence when it is "based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], . . . ." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.) "Similarly, when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates

to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.' " (*Ibid.*)  But as outlined above and as the trial court noted, Dr. Goodman's declaration is far from conclusory.  Dr. Goodman describes in detail her understanding of the facts and explains the reasons for her conclusions that Dr. Persons complied with the standard of care and that no act or omission of Dr. Persons caused Ms. Beauchemin's claimed injuries.

Plaintiffs contend Dr. Goodman did not sufficiently explain the basis of what they characterize as her assumption that Dr. Persons properly placed the implants.  We disagree.  As we have discussed above, Dr. Goodman explained she had reviewed the medical records, in which Dr. Persons described placing the implants with the logo facing the back or chest wall during the initial procedure in September 2020, and when Dr. Persons opened the left pocket in January 2021, the implant was still in the correct position.  In reaching her conclusion that the implants were properly placed but then flipped without negligence, Dr. Goodman also took into account "the quality of the patient's tissue and the size of the implants placed," noting that by the time of Ms. Beauchemin's surgery with Dr. Gold, her breasts had developed more ptosis (drooping) and the implants had shifted laterally in the pocket.  Dr. Goodman reviewed the testimony of Dr. Persons and Dr. Gold, both of whom concurred implants can flip.

It is thus clear from Dr. Goodman's declaration that, in arriving at her opinion the implants were correctly placed, she relied on the medical records, deposition testimony, and specific characteristics of Ms. Beauchemin's tissue and the implants that were placed.  We reject plaintiffs' suggestion that Dr. Goodman's opinion should have been excluded or rejected because the materials she relied on did not include different items, such as statistical

12

information or case studies.  The trial court did not abuse its discretion, or otherwise err, by admitting Dr. Goodman's opinions into evidence and finding defendants met their initial burden of production on summary judgment as to the elements of breach and causation.

### C. *Plaintiffs Did Not Present Evidence Raising a Triable Issue of Fact*

Plaintiffs contend that, even if Dr. Goodman's opinions were properly admitted and defendants met their initial burden of production, plaintiffs raised triable issues of fact as to breach and causation by providing their own declarations describing out-of-court statements by Dr. Gold.  We disagree.

In his declaration in opposition to summary judgment, Mr. Locks states that Dr. Gold called him during the September 29, 2021 procedure when he removed the breast implants that had been placed in Ms. Beauchemin by Dr. Persons.  Mr. Locks' declaration states that, "Dr. Gold told me that he had left the operating room to call me and that Ms. Beauchemin's breast implants had been incorrectly placed by Dr. Persons."  According to Mr. Locks, Dr. Gold stated "that Dr. Persons had placed the implants backwards," and Dr. Gold "explained . . . that this meant that the labels on the implants were not facing the proper direction."  Mr. Locks states in his declaration that, "Dr. Gold did not ever mention, suggest, or state, during our call on September 29, 2021, that [Ms. Beauchemin's] implants had flipped over after placement by Dr. Persons.  Dr. Gold was very specific, in his statements to me, that the implants had been placed incorrectly by Dr. Persons."

In her declaration, Ms. Beauchemin states that, after the September 29, 2021 procedure, "[Dr. Gold] told me that my breast implants had been placed incorrectly in me, upside down and backwards, and that they had malposition.  He also told me that there was no way I could have caused the implants to flip over and that the implants were placed incorrectly

13

initially during the surgery by Dr. Persons." Ms. Beauchemin continues by stating, "[Dr. Gold] told me that my pain was caused by the implants being placed incorrectly by Dr. Persons and caused by the implant rubbing on my muscle." Finally, Ms. Beauchemin states, "[Dr. Gold] told me I should file legal action against Dr. Persons for placing the implants incorrectly and causing me months of continuous pain."

As noted, the trial court sustained hearsay objections to the portions of plaintiffs' declarations attributing these statements to Dr. Gold. Plaintiffs contend (1) the court's hearsay ruling was error, and (2) the statements at issue (once admitted into evidence) raise triable issues of material fact as to the breach and causation elements of plaintiffs' medical negligence claim. We conclude that, even if the statements are considered, plaintiffs did not show there are triable issues of material fact. (Code Civ. Proc., § 437c, subds. (c), (p)(2).)[4]

Plaintiffs acknowledge that the opinions of Dr. Gold that they describe in their declarations "could reasonably be characterized as conclusory . . . ." And as we have discussed in part II.B, *ante*, an expert's conclusory opinion that is unaccompanied by a reasoned explanation has no evidentiary value. (*Property California SCJLW One Corp. v. Leamy* (2018) 25 Cal.App.5th 1155, 1163.) " 'An expert who gives only a conclusory opinion does not *assist* the jury to determine what occurred, but instead supplants the jury by *declaring*

---

[4] Because we conclude the statements that plaintiffs attribute to Dr. Gold do not raise triable issues of material fact, we need not address the parties' arguments as to whether the statements were properly excluded as hearsay or instead should have been admitted under the hearsay exception for prior inconsistent statements (Evid. Code, § 1235) because they differed from Dr. Gold's deposition testimony. We also need not address defendants' contention that the statements could have been excluded as improper expert testimony.

14

what occurred.' " (*Ibid.*) "These rules apply to expert witness declarations submitted in connection with a motion for summary judgment." (*Ibid.*) For example, in *Property California*, the appellate court upheld the trial court's decision to exclude an expert declaration submitted in opposition to a summary judgment motion where the trial court found the expert's opinions "lacked adequate foundation and adequate analysis." (*Ibid.*; see *id.* at pp. 1163–1164.)

As plaintiffs note, courts have stated that, because evidence offered in opposition to summary judgment is to be liberally construed, "a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189.) But even applying a somewhat more relaxed standard here in evaluating the evidence submitted by plaintiffs in opposition to summary judgment, the opinions they proffer (i.e., the brief statements of Dr. Gold as related by plaintiffs in their declarations) are not accompanied by any reasoned explanation.[5]

---

[5] In addition to citing the *Garrett* court's statement that less detail is required in an expert declaration filed in opposition to summary judgment (*Garrett, supra,* 214 Cal.App.4th at p. 189), plaintiffs cite *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332, where the court stated more broadly that "[t]he requisite of a detailed, reasoned explanation for expert opinions applies to 'expert declarations in *support* of summary judgment,' not to expert declarations in *opposition* to summary judgment." But we reject any suggestion by plaintiffs that this language should be read to mean an expert declaration offered in opposition to summary judgment need not contain any explanation of the expert's opinions. Indeed, in *Jennifer C.* itself, the declaration at issue included an explanation of the expert's reasoning and the materials on which he relied (*id.* at pp. 1330–1331), and the appellate court concluded the expert's opinions "were

15

Dr. Gold's statements (as reported by plaintiffs) that Dr. Persons "placed" the implants "incorrectly" or "backwards" and that "there was no way [Ms. Beauchemin] could have caused the implants to flip over" are not supported by an explanation for the conclusion that the implants must have been placed backwards and could not have flipped. Set against Dr. Goodman's declaration explaining her conclusion the implants were properly placed and flipped without negligence (including her opinion that flipping was made more likely by specific characteristics of Ms. Beauchemin's tissue and the implants used), these brief statements assuming incorrect placement do not raise a triable issue of material fact.

As to causation, Ms. Beauchemin states in her declaration that, "[Dr. Gold] told me that my pain was caused by the implants being placed incorrectly by Dr. Persons and caused by the implant rubbing on my muscle." In our view, this brief statement similarly does not raise a triable issue of fact. As noted, Dr. Goodman, in her declaration in support of summary judgment, explained the bases for her opinion that no act or omission of Dr. Persons was a substantial cause of Ms. Beauchemin's claimed injuries. Ms. Beauchemin's reports of pain were not typical of the type of procedure she had. Ms. Beauchemin had a preoperative history of pain and use of opioid medications, and there was a "lack of any found cause of pain," suggesting Ms. Beauchemin may be more susceptible to the perception of pain. Dr. Goodman also noted that Ms. Beauchemin's pain did not resolve upon removal of the implants. In contrast, the one-sentence opinion pertaining to causation that Ms. Beauchemin attributes to Dr. Gold does not address or consider these factors and is not accompanied by any explanation

adequately supported by a reasoned explanation and were not 'conclusory' " (*id.* at p. 1333).

16

as to how the alleged cause of Ms. Beauchemin's pain was identified.  We conclude plaintiffs did not raise a triable issue of material fact.

### III. DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
CLAY, J.[*]

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.